**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GVO PARTNERS LLC, *et al.*,[1] | ) | Case No. 26-10976-KBO |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**MOTION OF THE DEBTORS FOR INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING THE DEBTORS TO (A) CONTINUE THEIR INSURANCE**
**POLICIES AND (B) PAY AND HONOR ALL OBLIGATIONS WITH RESPECT**
**THERETO; (II) AUTHORIZING CONTINUATION OF INSURANCE PREMIUM**
**FINANCING ARRANGEMENTS; AND (III) GRANTING RELATED RELIEF**

The debtors and debtors in possession (each, a "**Debtor**" and collectively, the "**Debtors**")

in the above-captioned cases (these "**Cases**"), by and through their undersigned proposed counsel,

hereby move for entry of an order granting the relief described below.  In support of this motion

(the "**Motion**"), the Debtors rely on the *Declaration of Joseph Sciamanna in Support of Chapter*

*11 Petitions and First Day Pleadings* (the "**First Day Declaration**")[2] filed contemporaneously

herewith and respectfully state as follows:

**RELIEF REQUESTED**

1.       By the Motion, the Debtors request, pursuant to sections 105(a), 362(d), 363(b),

and 503(b) of the Bankruptcy Code, Bankruptcy Rules 4001, 6003, and 6004, and Local Rule

4001-1, entry of interim and final orders, the forms attached hereto as **Exhibit A** and **Exhibit B**

(respectively, the "**Interim Order**" and "**Final Order**"): (i) authorizing, but not directing, the

---

[1]       The Debtors in these Cases, along with the last four (4) digits of their federal tax identification numbers, are: GVO Partners LLC (5862); GVO Holdings Group LLC (8330), GVO Topco LLC (5638); GVO Urban, LLC (8860); GVO Still Waters, LLC (5823); GVO Sweetgrass, LLC (7775); and Urban Medspa & Weight Loss Center Charlotte, P.C. (7185).  The Debtors' mailing address is 218 Brighton Park Blvd., Suite 101, Summerville, SC 29486.

[2]       Capitalized terms used but not defined herein have the meaning ascribed in the First Day Declaration.

1

Debtors to (a) continue to maintain the Insurance Policies (as defined herein) and (b) honor the Insurance Obligations (as defined herein), including amounts owed to Lockton (as defined herein) or to make payments on or enter into insurance financing arrangement, in the ordinary course of business during the Cases, including with respect to payment of any prepetition Insurance Obligations; (ii) authorizing the Debtors' banks to receive, process, honor, and pay all checks presented for payment and electronic payment requests related to the foregoing to the extent directed by the Debtors in accordance with the Motion; (iii) authorizing the Debtors' banks to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to the Motion without any duty of further inquiry and without liability for following the Debtors' instructions; and (iv) granting related relief.

### JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105(a), 362(d), 363(b), 364(c), and 503(b) of title 11 of the United States Code, as amended (the "**Bankruptcy Code**"), Rules 4001, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

3.      Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final order or judgment with respect to the Motion if it is later determined that the Court, absent

10837309.1

consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

4.      On June 16, 2026 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have filed a motion requesting joint administration of these Cases pursuant to Bankruptcy Rule 1015(b).  No trustee, examiner, or official committee of unsecured creditors has been appointed in these Cases.

5.      The Debtors are, collectively, a managed services organization, that manages and operates a group of medical aesthetics practices.  Additional information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of Cases, is set forth in the First Day Declaration and is incorporated herein by reference.

## THE INSURANCE POLICIES

6.      In the ordinary course of their business, the Debtors maintain various insurance policies (the "**Insurance Policies**") to provide coverage for, among other things, commercial property, commercial general liability, automobile, umbrella, commercial crime, employment practices, and director and officer liability.  A list of the Insurance Policies is attached hereto as **Exhibit C** (the "**Insurance Schedule**").

7.      The Insurance Policies help limit the various risks associated with operating the Debtors' businesses and are essential to the continued operation of the Debtors' businesses during these cases.  In addition, certain of the Insurance Policies are required by regulations, laws, and

10837309.1

contracts that govern the Debtors' commercial activities.  The Debtors believe the Insurance Policies provide coverage that is typical for businesses within the Debtors' industry.

8.      The Insurance Policies generally require the Debtors to pay annual premiums (the "**Insurance Premiums**") at rates established by the insurers (the "**Insurers**").  The Insurance Premiums are approximately $174,492.92 in the aggregate for the Insurance Policies.  The Insurance Premiums are typically billed directly by the Insurers on or soon after a given insurance policy's period date and are paid by the Debtors either as a lump sum or by premium financing, most recently with IPFS Corporation.  As of the Petition Date, all premiums for the Insurance Policies and all related premium financing agreements have been paid in full.

9.      The Insurance Policies also generally require that the Debtors pay a per-incident deductible or self-insured retention amount (collectively, "**Deductibles**") and impose reporting and other obligations on the Debtors (the "**Insurance Obligations**").  Generally, if a claim is made against the Insurance Policies, the Debtors will pay the Deductible to the applicable Insurer who will then administer and make any payments in connection with the claim.  During the twelve months prior to the Petition Date, the Debtors have paid approximately $14,541 of Deductibles on average each month.

10.      By the Motion, the Debtors request authority, but not direction, to continue the Insurance Policies and honor the Insurance Obligations in the ordinary course of business throughout these cases, including but not limited to paying any Deductibles or other costs that may be due or owing or that come due or owing under the Insurance Policies, whether arising from the Debtors' prepetition or postpetition operations.  For the sake of clarity, the Debtors believe no prepetition amounts are currently owing on account of the Insurance Obligations but seek to pay in the ordinary course any obligations that may come due during the pendency of these cases.

10837309.1

11. Debtors also request authority, but not direction, to continue honoring their obligations to their insurance broker Lockton Insurance ("**Lockton**") in the ordinary course of business throughout these Cases, whether arising from the Debtors' prepetition or postpetition operations. In general, Lockton is compensated through premiums paid for policies at the time of renewal. Lockton is intimately familiar with the Debtors, their insurance needs, and the Insurance Policies. Lockton, therefore, plays a critical role in the procurement and renewal of the Insurance Policies.

## BASIS FOR RELIEF REQUESTED

### I.   THE REQUESTED RELIEF IS NECESSARY TO COMPLY WITH VARIOUS LEGAL REQUIREMENTS AND GUIDELINES

12. Maintaining insurance coverage under the Insurance Policies on an uninterrupted basis is essential to the continued operation of the Debtors' business and, in some cases, is required under the United States Trustee's Operating Guidelines for Cases (the "**Operating Guidelines**"), laws and regulations applicable to the Debtors' business, the laws of the various states in which the Debtors operate, and the Debtors' various contractual commitments. *See* Operating Guidelines § 3 (requiring maintenance of appropriate insurance coverage).

13. The Debtors believe that the ordinary course maintenance of their insurance coverage, including paying all prepetition Insurance Obligations, satisfying all postpetition commitments to the Insurers, renewing the Insurance Policies, entering into new insurance arrangements, and honoring obligations to Lockton is necessary and essential to the Debtors' reorganization efforts.

10837309.1

## II.   THE REQUESTED RELIEF IS WARRANTED UNDER SECTIONS 363(b)(1) AND 105(a) OF THE BANKRUPTCY CODE

14.     The Court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code, which provides, in pertinent part, that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).  Generally, the debtor is only required to "show that a sound business purpose" justifies the proposed use of property.  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring "good business reason" for use under section 363(b) of the Bankruptcy Code). Courts have consistently been reluctant to interfere with a debtor in possession's use of property "unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's related discretion."  *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985); *see also In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").  *Cf. In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

15.     In addition, section 105(a) of the Bankruptcy Code empowers the Court to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the title.  11 U.S.C. § 105(a).  Section 105(a) operates "to facilitate the implementation of other Bankruptcy Code provisions[,]" and in so doing, "provides the bankruptcy court [with] broad authority to 'exercise its equitable powers[.]'" *In re Nosek*, 544 F.3d 34, 43 (1st Cir. 2008) (citation omitted).  Bankruptcy courts have interpreted this provision to authorize payments on prepetition

6

10837309.1

claims where the payments are essential to the success of the debtor's chapter 11 objectives under what is commonly known as the "necessity of payment doctrine."  *See, e.g., In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) ("Thus, the 'necessity of payment' doctrine … teaches no more than, if payment of a claim which arose prior to reorganization is essential to the continued operation of the [debtor's business] during reorganization, payment may be authorized even if it is made out of corpus."); *In re Just For Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) (holding that section 105(a) "provides a statutory basis for the payment of pre-petition claims" under necessity of payment doctrine); *In re Pers. Commc'ns Devices, LLC*, 588 B.R. 661, 666 (Bankr. E.D.N.Y. 2018) ("[The necessity of payment] rule recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor."); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) ("[T]he appropriate standard … is commonly referred to as 'the necessity of payment doctrine.'").

16.     The Debtors' sound business judgment supports honoring the prepetition Insurance Obligations because they are necessary the Debtors' estates and ongoing operations.  Failure to pay these obligations could result in: (a) cancellation of the Insurance Policies; (b) the Debtors' inability to obtain renewal of the Insurance Policies on terms that are competitive; and (c) violation of the Operating Guidelines, applicable laws and regulations, various contractual commitments, or the fiduciary duties of the Debtors as debtors in possession.  Moreover, section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. Each of these outcomes would be detrimental to the Debtors, their creditors, and their estates and would create unnecessary risks that far outweigh the cost of the prepetition Insurance Obligations.

10837309.1

17.     Honoring the prepetition Insurance Obligations is also necessary to maximize the value of the Debtors' estates.  These obligations are necessary to avoid cancellation, default, alteration, assignment, attachment, lapse, or any form of impairment to the coverage, benefits, or proceeds provided under the Insurance Policies, and to maintain good relationships with the Insurers, Lockton, and local governments.  If any of those risks were to materialize, they could cause substantial disruption and expose the Debtors to liabilities significantly greater than the amount of the obligations to be paid.  Further, based on the Debtors' current circumstances, it is unlikely that the Debtors will be able to renew or replace their existing Insurance Policies on terms more favorable than those currently offered by the Insurers.  The process of establishing new insurance policies would also be unduly time-consuming, burdensome, and costly to the Debtor. Accordingly, continuation of the Insurance Policies is essential to the Debtors' operations and reorganization efforts.

18.     For these reasons and pursuant to sections 363(b)(1) and 105(a) of the Bankruptcy Code, the Debtors request authority, but not direction, to continue the Insurance Policies and honor the Insurance Obligations, including amounts owed to Lockton, in the ordinary course of business during the Cases, including paying any prepetition Insurance Obligations.

## III.   THE REQUESTED RELIEF IS WARRANTED UNDER SECTION 363(c) OF THE BANKRUPTCY CODE

19.     Section 363(c) of the Bankruptcy Code provides that a debtor in possession may "enter into transactions" in the ordinary course without notice or a hearing. *See* 11 U.S.C. § 363(c). In evaluating whether a transaction is in the ordinary course, a court must determine whether it is "of the sort commonly undertaken by companies in [the debtor's] industry" and whether it subjects a hypothetical creditor "to economic risk of a nature different from those he accepted when he decided to extend credit." *In re Roth Am., Inc.*, 975 F.2d 949, 952-53 (3d Cir. 1992).

10837309.1

20.     The Debtors submit that the relief requested herein to maintain the Insurance Policies and honor obligations arising thereunder and under Lockton's agreements, including undertaking renewals of the Insurance Policies as they expire or entering into new premium financing arrangements, are each the type of ordinary course transactions contemplated by section 363(c) of the Bankruptcy Code.  In the event, however, that the Court finds that any actions are not properly characterized as transactions in the ordinary course of the Debtors' business, the Debtors respectfully request that the Court authorize the Debtors to take actions pursuant to sections 363(b) and 105(a) of the Bankruptcy Code as a sound exercise of business judgment and necessary to preserve the Debtors' estates.

## IV.   CONTINUING TO HONOR OBLIGATIONS UNDER PREMIUM FINANCING ARRANGEMENTS IS WARRANTED UNDER SECTION 364(C) OF THE BANKRUPTCY CODE

21.     In the ordinary course of their operations, the Debtors may, from time to time, rely on premium financing arrangements to obtain and renew Insurance Policies.  While the current Insurance Policies have been paid in full, the Debtors anticipate the need to renew these policies during these cases and to require additional premium financing during the course of these Cases.

22.     Insurance premium financing traditionally involves an advance by the finance company to the insurance company or its agent of the premium due for the full term of the insurance policy.  "This advance is then repaid by the insured to the finance company in amortized monthly installments which include an additional amount to cover financing charges.  The finance company is secured in making this advance payment by obtaining the right to cancel the policy and to receive the return premium due upon cancellation if timely repayments are not made." *Baker & Co., Florida v. Preferred Risk Mut. Ins. Co.*, 569 F.2d 1347, 1348 (5th Cir. 1978).  The return premium due to the finance company upon cancellation is known as an unearned premium.

23. Security interests created by premium financing agreements have been recognized as creating secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements and, by extension, entry into purchase finance agreements constitutes the incurrence of secured credit. *See In re U.S. Repeating Arms Co.*, 67 B.R. 990, 994–95 (Bankr. D. Conn. 1986); *In re Auto-Train Corp.*, 9 B.R. 159, 164–66 (Bankr. D.D.C. 1981). Because the Debtors are required to maintain insurance coverage during these Cases, the cancellation of any of the Insurance Policies due to any failure to honor premium financing arrangements would be particularly disastrous. Accordingly, the Debtors submit that continuing to honor obligations under premium financing agreements is necessary and appropriate.

24. Pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur secured postpetition debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate. *See, e.g., In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (stating that with respect to postpetition credit, courts "permit debtors-in-possession to exercise their basic business judgment consistent with their fiduciary duties"); *In re Simasko Prod. Co.*, 47 B.R. 444, 448–49 (Bankr. D. Colo. 1985) (authorizing interim financing agreement where debtors' business judgment indicated financing was necessary and reasonable for the benefit of the estate). Given the prevailing practices in the well-established industry for premium financing, the Debtors believe that it is highly unlikely they would be able to obtain financing for their premiums under the Insurance Policies absent a secured financing agreement. As a result, the Debtors submit that permitting them to continue performing under the present premium financing arrangement and to grant security interests to securing such obligations is appropriate under section 364(c) of the Bankruptcy Code.

10837309.1

## V.    CAUSE EXISTS TO AUTHORIZE THE BANKS TO HONOR AND PROCESS PAYMENTS IN ACCORDANCE WITH THIS MOTION

25.    The Debtors expect to have sufficient funds to pay the amounts described in this Motion with cash flow from operations and with cash collateral or postpetition financing.  In addition, the Debtors have implemented controls to ensure that prepetition claims will not be paid except as authorized by the Court and can readily identify checks or wire transfers relating (or not) to authorized payments.  Accordingly, the Debtors believe there is minimal risk that payments not authorized by the Court will be inadvertently made.  The Debtors therefore request that the Court authorize and direct the Debtors' banks or other applicable financial institutions, when requested by the Debtors, to receive, process, honor and pay all checks or wire transfers in respect of the relief requested herein, regardless of whether the checks were presented or fund transfer requests were submitted before, on or after the Petition Date, provided that sufficient funds are available in the Debtors' accounts to cover such checks and transfers and that the applicable financial institutions are authorized to rely on the Debtors' designation of any particular check or transfer as being approved by the Interim Order and the Final Order.

## IMMEDIATE AND UNSTAYED RELIEF IS NECESSARY

26.    The Court may grant the relief requested in this Motion within 21 days of the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003.  For the reasons stated herein, the relief requested herein is integral to the Debtors' ability to operate their business in the ordinary course, preserve their going concern value and their assets during the immediate postpetition period, and ultimately, maximize the value of their estates for the benefit of all creditors.  The lack of such relief during the first 21 days of these Cases would severely impair the Debtors' operations at a critical time.  Accordingly, the Debtors

11

submit that the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 has been satisfied and that the requested relief should be granted immediately.

27.     The Debtors also seek waiver of the 14-day stay that would be applicable to the relief requested herein "unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to prevent immediate and irreparable harm by continuing to operate without interruption and thereby preserve value for their estates and creditors.  Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h) and provide for the immediate effectiveness of any relief granted by the Interim Order or Final Order.

## RESERVATION OF RIGHTS

28.     The Debtors expressly reserve their right and defenses with respect to any claims related to the relief sought herein.  Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim against the Debtors, a waiver of the Debtors' rights with respect to any claim against any other person, a promise to pay any claim or continue any applicable program postpetition, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## NOTICE

29.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to Firstrust Bank; (c) the Insurance Companies; (d) the holders of the 20 largest claims against the Debtors on a consolidated basis; and (e) all

12

10837309.1

parties that have requested notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered on this Motion will also be served as required by Local Rule 9013-1(m).  The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

*[ remainder of page intentionally left blank ]*

10837309.1

## **CONCLUSION**

**WHEREFORE**, the Debtors respectfully request that this Court enter the Interim Order and the Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as may be just and proper.

Dated:  June 22, 2026       **RAINES FELDMAN LITTRELL LLP**
      Wilmington, Delaware

                                */s/ Thomas J. Francella*
                                Thomas J. Francella, Jr. (No. 3835)
                                Mark W. Eckard (No. 4542)
                                824 North Market Street, Suite 805
                                Wilmington, DE 19801
                                Telephone: (302) 772-5803
                                tfrancella@raineslaw.com
                                meckard@raineslaw.com

                                *Proposed Counsel to the Debtors and Debtors in Possession*

14