**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GVO PARTNERS LLC, *et al.*,[1] | ) | Case No. 26-10976-KBO |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING DEBTORS TO HONOR AND CONTINUE CERTAIN
CUSTOMER PROGRAMS AND CUSTOMER OBLIGATIONS IN THE
ORDINARY COURSE OF BUSINESS AND GRANTING RELATED RELIEF**

The debtors and debtors-in-possession (each, a "**Debtor**" and collectively, the "**Debtors**")

in the above-captioned cases (the "**Cases**"), by and through their undersigned proposed counsel,

hereby move for the entry of interim and final orders granting the relief described below.  In

support of this motion (the "**Motion**"), the Debtors rely on the *Declaration of Joseph Sciamanna*

*in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**")[2] filed

concurrently herewith and respectfully represent as follows:

**RELIEF REQUESTED**

1.      By this Motion, the Debtors seek entry of interim and final orders, the forms

attached hereto as **Exhibit A** and **Exhibit B**, (respectively, the "**Interim Order**" and the "**Final**

**Order**") authorizing the Debtors to honor certain prepetition Customer Obligations (as defined

below) and otherwise to continue, renew, replace, modify, implement, revise and/or terminate

---

[1]      The Debtors in these Cases, along with the last four (4) digits of their federal tax identification numbers, are: GVO Partners LLC (5862); GVO Holdings Group LLC (8330), GVO Topco LLC (5638); GVO Urban, LLC (8860); GVO Still Waters, LLC (5823); GVO Sweetgrass, LLC (7775); and Urban Medspa & Weight Loss Center Charlotte, P.C. (7185).  The Debtors' mailing address is 218 Brighton Park Blvd., Suite 101, Summerville, SC 29486.

[2]      Capitalized terms used but not defined herein have the meaning ascribed in the First Day Declaration.

1

Customer Programs (as defined below) in the ordinary course of business consistent with past practices, and granting related relief.

2.      Under the Interim Order and Final Order, the Debtors would be authorized to honor up to approximately $5,000 in prepetition Customer Obligations, although the Debtors expect the actual costs to be substantially lower as set forth herein.  Such amounts do not include prepetition amounts owed as refunds, credits, setoffs, or other non-cash expenditures that the Debtors seek authority to honor.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors confirm their consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent that it is later determined that the Court, absent such consent, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the United States Code, as amended (the "**Bankruptcy Code**"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

2

10837429.1

## BACKGROUND

### A.  THE CASES

6.     On June 16, 2026 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these Cases pursuant to Bankruptcy Rule 1015(b).  No trustee, examiner, or official committee of unsecured creditors has been appointed in these Cases.

7.     The Debtors are, collectively, a managed services organization, that manages and operates a group of medical aesthetics practices.  Additional information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of these Cases, is set forth in the First Day Declaration and is incorporated herein by reference.

### B.  THE DEBTORS' CUSTOMER PROGRAMS

8.     Prior to the Petition Date, in the ordinary course of business and as is customary in their industry, certain of the Debtors created and implemented a gift certificate and rewards programs (each as defined below, and collectively the "**Customer Programs**").  The Customer Programs are designed to develop and sustain customer relationships and loyalty, improve profitability, and generate goodwill for the Debtors' operating cosmetic practices.  On account of the Customer Programs, the Debtors may owe certain obligations to their customers as well as other third parties, arising both before and after the Petition Date (collectively, the "**Customer Obligations**").

3

10837429.1

### i. Gift Certificates

9. The Debtors sell gift certificates for their operating cosmetic practices (the "**Gift Certificate Program**"). The Gift Certificate Program encourages loyal customers and new customers to use the cosmetic practices. The Debtors also benefit from the Gift Certificate Program because holders of gift certificates often spend more than the amount of the gift certificate.

10. The Debtors seek authority to continue the Gift Certificate Program, including but not limited to honoring gift certificates purchased prior to the Petition Date. Continuing to honor gift certificates is essential to maintaining the goodwill of and relationships with the Debtors' customers. If the Debtors do not honor existing gift certificates, customers are likely to be less willing to return to the cosmetic practices and the Debtors' cosmetic practices may face negative coverage in the media and backlash through social media, online review websites and apps, and other online channels. Further, if the Debtors do not continue to honor their gift certificates, the Debtors risk loss of customers and wallet share as well as a decreased ability to reach and attract new customers. Simply put, failing to honor existing gift certificates the Debtors at a competitive disadvantage and would decrease the value of the Debtors' operations as a going concern.

11. The Debtors have gift certificates outstanding in the approximate amount of $415,380. Consistent with past practice, however, based on historical data, the Debtors do not anticipate more than $150,000 in gift certificate redemptions during the life of these Cases.

### ii. Customer Rewards

12. In the ordinary course of business, the Debtors offer discounts for return customers (the "**Rewards Program**"). As of the Petition Date, the Debtors estimate that the value of the

10837429.1

Rewards Program for to return customer discounts will total approximately $282,000 through the life of these Cases.

### *iii.* *Customer Refunds*

13. In the ordinary course of their business, the Debtors may offer refunds to customers that contact the Debtors to raise issues regarding their experience at one of the cosmetic practices. The Debtors issue the refunds in the hopes of retaining the customer as a future guest and maintaining the Debtors' brand reputation. The Debtors incur *de minimis* amounts of Refunds each month.

14. The Debtors believe that continuing to honor requests for Refunds, ***if they arise***, is essential to maintaining their relationships with customers. Accordingly, the Debtors seek the authority to continue, in their discretion, honoring requests for Refunds in the ordinary course of business, consistent with past practices, including honoring postpetition requests for Refunds based on experiences that preceded the Petition Date.

## BASIS FOR RELIEF REQUESTED

### A. CONTINUING THE CUSTOMER PROGRAMS IS IN THE BEST INTERESTS OF THE ESTATES

15. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). To authorize a particular use of estate property under section 363(b), courts require only that the debtor "show that a sound business purpose" justifies the requested relief. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing payment of prepetition claims where debtors articulate "some business justification, other than mere appeasement of major creditors"). "Where the trustee articulates a

5

reasonable basis for the business decision, courts will generally not entertain objections." *In re Culp*, 545 B.R. 827, 844 (D. Del. 2016), *aff'd*, 681 F. App'x 140 (3d Cir. 2017); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

16.     In addition, as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors have a duty to protect and preserve the value of their business and assets.  Courts have recognized that "[t]here are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ, L.L.C.,* 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Marvel Ent. Grp., Inc.*, 140 F.3d 463, 471 (3d. Cir. 1998) ("The debtor-in-possession is a fiduciary of the creditors and, as a result, has an obligation to refrain from acting in a manner which could damage the estate, or hinder a successful reorganization.") (quotation omitted).

17.     The Customer Programs are an integral part of the Debtors' businesses and enable the Debtors to attract and retain customers.  Continuing to administer their Customer Programs without interruption during the pendency of these Cases and honoring prepetition commitments to customers will help preserve the Debtors' valuable customer relationships and goodwill, which will inure to the benefit of the Debtors' creditors and their estates.  The Debtors designed the Customer Programs to gain access to new customers, build and maintain customer loyalty, and enhance brand awareness.  If the Debtors are unable to continue their Customer Programs or satisfy Customer Obligations, the Debtors risk losing revenue, customer loyalty, and goodwill, all of which would harm their prospects for reorganization.  Accordingly, continuing the Customer Programs and honoring all customer claims thereunder serves a sound business purpose and is consistent with, if not required by, the Debtors' fiduciary duties.

**B. CONTINUATION OF THE CUSTOMER PROGRAMS IS AUTHORIZED BY SECTION 105(A) OF THE BANKRUPTCY CODE AND THE DOCTRINE OF NECESSITY**

18.     The Debtors' proposed maintenance of the Customer Programs and honoring and payment of the Customer Obligations should also be authorized pursuant to section 105(a) of the Bankruptcy Code and the "doctrine of necessity."   Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."  *In re Ionosphere*, 98 B.R. at 175.  "Under [section] 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."  *In re NVR L.P.,* 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere*, 98 B.R. at 177); *accord In re Just for Feet*, *Inc.,* 242 B.R. 821, 826 (D. Del. 1999) ("To invoke the necessity of payment doctrine, a debtor must show that payment of the pre-petition claims is 'critical to the debtor's reorganization.'") (quoting *In re Fin. News Network, Inc.*, 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991)); *see also In re Eagle-Picher Indus., Inc.,* 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").

19.     Federal courts have consistently permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g., In re Lehigh & New Eng. Ry. Co.,* 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of  the . . . [business] during reorganization, payment may be authorized even if it is

7

10837429.1

made out of [the] corpus"); *Dudley v. Mealey,* 147 F.2d 268 (2d Cir. 1945), cert. denied, 325 U.S. 873 (1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases).

20. As stated above, the Debtors' ability to maintain the Customer Programs and honor the Customer Obligations is critical to preserving the Debtors' valuable customer relationships, goodwill, and going concern value. If the Debtors are prohibited from maintaining the Customer Programs consistent with their past business practices, the Debtors will alienate their loyal customer base who frequently dine at their Restaurants and impair their reorganization efforts. Honoring the Customer Obligations will help to ensure the continued patronage of their customers, which is imperative to ongoing operations and viability of the Debtors' businesses.

21. Courts in this district have granted similar relief in other chapter 11 cases. *See, e.g.*, *In re One Table Restaurant Brands, LLC, et al.*, Case No. 24-11553 (KBO) [Docket No. 57] (Bankr. D. Del. July 17, 2024); *In re MRRC Hold Co., et al.,* Case No. 24-11164 (CTG) [Docket No. 117] (Bankr. D. Del. June 27, 2024); *In re Express, Inc., et al.*, Case No. 24-10831 (KBO) [Docket No. 227] (Bankr. D. Del. May 14, 2024); *In re Unconditional Love Inc., et al.*, Case No. 23-11759 (KBO) [Docket No. 53] (Bankr. D. Del. Dec. 12, 2023); *In re Craftworks Parent, LLC*, Case No. 20-10475 (BLS) [Docket No. 71] (Bankr. D. Del. Mar. 4, 2020); *In re BL Restaurants Holding, LLC,* Case No. 20-10156 (MFW) [Docket No. 190] (Bankr. D. Del. Feb. 26, 2020); *In re Forever 21, Inc.,* Case No. 19-12122 (KG) (Bankr. D. Del. Oct. 28, 2019) [Docket No. 328]; and *In re RUI Holding Corp.,* Case No. 19-11509 (JTD) [Docket No. 107] (Bankr. D. Del. Aug. 6, 2019).

22. Accordingly, in the exercise of their sound business judgment, the Debtors believe that a sound business purpose exists for the relief requested herein because it will pay dividends

8

10837429.1

with respect to the Debtors' ability to maximize value for all interested parties, especially at this critical time following the filing of these Cases and in the interim before the Debtors hope to complete a sale of their ongoing businesses.

## C. THE COURT SHOULD AUTHORIZE BANKS TO HONOR PAYMENTS IN ACCORDANCE WITH THIS MOTION

23.     The Debtors expect to have sufficient funds to pay the amounts described in this Motion with cash flow from operations, cash collateral or postpetition financing.  In addition, the Debtors have implemented controls to ensure that prepetition claims will not be paid except as authorized by the Court and can readily identify checks or wire transfers relating (or not) to authorized payments.  Accordingly, the Debtors believe there is minimal risk that payments not authorized by the Court will be inadvertently made.  The Debtors therefore request that the Court authorize and direct the Debtors' banks or other applicable financial institutions, when requested by the Debtors, to receive, process, honor and pay all checks or wire transfers in respect of the relief requested herein, regardless of whether the checks were presented or fund transfer requests were submitted before, on or after the Petition Date, provided that sufficient funds are available in the Debtors' accounts to cover such checks and transfers and that the applicable financial institutions are authorized to rely on the Debtors' designation of any particular check or transfer as being approved by the Interim Order and the Final Order.

## IMMEDIATE AND UNSTAYED RELIEF IS NECESSARY

24.     The Court may grant the relief requested in this Motion within 21 days of the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003.  For the reasons stated herein, the relief requested herein is integral to the Debtors' ability to operate their business in the ordinary course, preserve their going concern value and their assets during the immediate postpetition period, and ultimately, maximize the value of

9

their estates for the benefit of all creditors.  The lack of such relief during the first 21 days of these Cases would severely impair the Debtors' operations at a critical time.  Accordingly, the Debtors submit that the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 has been satisfied and that the requested relief should be granted immediately.

25.     The Debtors also seek waiver of the 14-day stay that would be applicable to the relief requested herein "unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to prevent immediate and irreparable harm by continuing to operate without interruption and thereby preserve value for their estates and creditors.  Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h) and provide for the immediate effectiveness of any relief granted by the Interim Order or Final Order.

**RESERVATION OF RIGHTS**

26.     The Debtors expressly reserve their right and defenses with respect to any claims related to the relief sought herein.  Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim against the Debtors, a waiver of the Debtors' rights with respect to any claim against any other person, a promise to pay any claim or continue any applicable program postpetition, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

10

10837429.1

**NOTICE**

27.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to Firstrust Bank; (c) the holders of the 20 largest claims against the Debtors on a consolidated basis; and (d) all parties that have requested notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered on this Motion will be served as required by Local Rule 9013-1(m).  The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

**CONCLUSION**

**WHEREFORE**, the Debtors respectfully request that this Court enter the Interim Order and the Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as may be just and proper.

10837429.1

Dated: June 22, 2026
      Wilmington, Delaware

**RAINES FELDMAN LITTRELL LLP**

*/s/ Thomas J. Francella, Jr.*
Thomas J. Francella, Jr. (No. 3835)
Mark W. Eckard (No. 4542)
824 North Market Street, Suite 805
Wilmington, DE 19801
(302) 772-5803
tfrancella@raineslaw.com
meckard@raineslaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

10837429.1