**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GVO PARTNERS LLC, *et al.*,[1] | ) | Case No. 26-10976-KBO |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING PAYMENT OF PREPETITION SALES, USE AND OTHER**
**TAXES AND FEES; AND (II) GRANTING RELATED RELIEF**

The debtors and debtors in possession (the "**Debtors**") in the above-captioned cases (the "**Cases**"), by and through their undersigned proposed counsel, hereby move for entry of interim and final orders granting the relief described below.  In support of this motion (the "**Motion**"), the Debtors rely on the *Declaration of Joseph Sciamana in Support of Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**")[2] filed concurrently herewith and respectfully state as follows:

**RELIEF REQUESTED**

1. By this Motion, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "**Interim Order**" and the "**Final Order**") (i) authorizing the Debtors to (a) remit Taxes and Fees (as defined herein) that will become payable during the pendency of these Cases, including any penalties and interest thereon, to various federal, state, county, and city taxing and licensing authorities ("**Taxing**

---

[1] The Debtors in these Cases, along with the last four (4) digits of their federal tax identification numbers, are: GVO Partners LLC (5862); GVO Holdings Group LLC (8330), GVO Topco LLC (5638); GVO Urban, LLC (8860); GVO Still Waters, LLC (5823); GVO Sweetgrass, LLC (7775); and Urban Medspa & Weight Loss Center Charlotte, P.C. (7185).  The Debtors' mailing address is 218 Brighton Park Blvd., Suite 101, Summerville, SC 29486.

[2] Capitalized terms used but not defined herein have the meaning ascribed in the First Day Declaration.

1

10837365.1

**Authorities**") and (b) remit and pay any Audit Amounts that may become payable in the ordinary course of business; and (ii) granting related relief.

2.      The Debtors request authority to pay all Taxes and Fees owed to the Taxing Authorities in the ordinary course of business. The Debtors estimate that, over the next 30 days, the total amount of Taxes and Fees will not exceed approximately $4,000 in the aggregate. The Debtors also request that all banks and other financial institutions on which checks to third parties are drawn and/or electronic payments are made pursuant to this Motion be authorized to receive, process, honor, and pay any and all such checks (whether issued or presented prior to or after the Petition Date) and electronic payments, and to rely on the representations of the Debtors as to which checks are authorized to be paid. In addition, the Debtors seek a hearing to consider entry of the Final Order within 30 days of the Petition Date (as defined below).

3.      The Debtors believe that payment of the Taxes and Fees, including any prepetition amounts, is necessary to avoid immediate and irreparable harm and should be approved pursuant to the Proposed Orders. To the best of the Debtors' knowledge, the Taxes and Fees generally consist of current tax and fee obligations, and are not in respect of catch-up payments, other than any prepetition payments that were interrupted by the commencement of these cases.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction to consider and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure for the District of Delaware (the "**Local Rules**"), The Debtors consent to the entry of a final order or judgment with respect to the Motion if it is later determined that the Court, absent such consent, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

10837365.1

5. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory bases for the relief sought herein are sections 105(a), 507(a)(8) and 541(d) of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

### A. THE CHAPTER 11 CASES

7. On June 16, 2026 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee of unsecured creditors has been appointed in these Cases.

8. The Debtors are, collectively, a managed services organization, that manages and operates a group of medical aesthetics practices. Additional information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of Cases, is set forth in the First Day Declaration and is incorporated herein by reference.

### B. DEBTORS' TAX OBLIGATIONS

9. In the ordinary course of business, the Debtors incur or collect and remit Sales and Use Taxes, Income Taxes, Franchise Taxes, Personal Property Taxes, Business Fees, and Audit Amounts (each as defined below, and collectively, the "**Taxes and Fees**"). The Debtors pay such Taxes and Fees to federal, state, local taxing and other governmental authorities and/or municipal or governmental subdivisions or agencies of those states and/or counties ("**Taxing Authorities**") in connection with the operation of their businesses and the sale of their products or services at their practice locations. The Taxes and Fees are paid monthly, quarterly, semiannually, or annually

to the respective Taxing Authorities, depending on the given Tax or Fee and the relevant Taxing Authority to which it is paid.  The Debtors seek authority to pay all prepetition Taxes and Fees in the ordinary course of business owed to the Taxing Authorities as described below.

> ### i.    *Sales and Use Taxes*

10.    The Debtors collect and remit sales, use and related taxes ("**Sales and Use Taxes**") in connection with the operation of their practice locations.  In general, sales taxes accrue as the Debtors' products are sold and are calculated based upon a statutory percentage of the sale price. In all of the states where the Debtors operate, they are required to collect sales taxes from purchasers of their products and services on a per sale basis and then remit sales taxes to the applicable Taxing Authority. Additionally, the Debtors may incur and collect use taxes when they purchase taxable products for which no sales tax was charged by their vendors. The Sales and Use Taxes collected or incurred are typically remitted to the Taxing Authorities monthly or quarterly in arrears.

11.    The Debtors believe that as of the Petition Date approximately $3,900 of such taxes have accrued and will become due and payable in the first 30 days after the Petition Date (the "**Interim Period**").

> ### ii.    *Income Taxes*

12.    The Debtors are also subject to state and federal taxes on income ("**Income Taxes**") and taxes in order to conduct business in particular jurisdictions ("**Franchise Taxes**"). Such amounts are generally paid quarterly or annually.

13.    The Debtors do not have any outstanding Income Tax obligations as of the Petition Date but, in an abundance of caution, ask for authority to any prepetition income taxes that may come to light as the result of a clerical error.

10837365.1

### iii.     *Personal Property Taxes*

14.     The Debtors also remit taxes to Taxing Authorities relating to personal property that the Debtors use in the operation of their businesses (the "**Personal Property Taxes**"). The Debtors believe that as of the Petition Date approximately there are no such taxes in arrears or otherwise unpaid.  Approximately $2,842.20 will become due during the Interim Period.

### iv.     *Business Licenses, Permits and Other Fees*

15.     The Debtors are required to pay various taxes and fees for business licenses annual reports, permits, and other similar types of obligations (the "**Business Fees**") to continue conducting their businesses in conformity with state and local laws.  The Debtors remit required amounts for the Business Fees on a monthly, quarterly, or annual basis, depending on the requirements of the particular Taxing Authority.  The Debtors believe that approximately $5,000 of such taxes will become due during the Interim Period.

### v.     *Federal and State Audits*

16.     In addition, the Debtors are periodically subject to audits with respect to their taxes and may agree that they owe, or may be found to owe, additional amounts for prior period taxes arising on account of audits (collectively, the "**Audit Amounts**").  As of the Petition Date, there are no such audits pending.  Nevertheless, in an abundance of caution, the Debtors seek authority, but not direction, to satisfy any such Audit Amounts resulting from any audits that may arise, in the ordinary course of business upon final agreement to, or determination of, the applicable Audit Amounts.

## BASIS FOR RELIEF REQUESTED

17.     The Court should grant the relief requested herein because: (i) portions of the Taxes and Fees are not property of the estates; (ii) portions of the Taxes and Fees are entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code; (iii) the Taxing Authorities or the

parties who ordinarily collect the Taxes and Fees may file liens, initiate audits, or otherwise proceed against the Debtors for unpaid Taxes and Fees and such actions will result in unnecessary expense and distraction from the Debtors' efforts to maximize the value of their estates; (iv) failure to pay Business Fees may disrupt current operations; and (v) section 105(a) of the Bankruptcy Code and the Court's general equitable powers permit the Court to grant such relief.

## A. CERTAIN OF THE TAXES ARE NOT PROPERTY OF THE DEBTORS' ESTATES

18.     The Debtors' payment of the Taxes and Fees, though arguably a payment of a prepetition claim, is justified in large part because certain of these amounts are not property of the Debtors' estates pursuant to section 541(d) of the Bankruptcy Code.  Specifically, section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest… becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d).

19.     Consistent with section 541(d) of the Bankruptcy Code, courts have held that certain types of taxes are not part of a debtor's estate. *See, e.g., Begier v. Internal Revenue Serv.*, 496 U.S. 53, 57-60 (1990) (holding that any prepetition payment of trust fund taxes is not a transfer subject to avoidance because such funds are not the debtor's property); *DuCharmes & Co., Inc. v. Mich. (In re DuCharmes & Co.)*, 852 F.2d 194 (6th Cir. 1988) (per curiam) (same); *Shank v. Wash. State Dept. of Revenue (In re Shank)*, 792 F.2d 829, 833 (9th Cir. 1986) (sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax and not released by bankruptcy discharge); *DeChiaro v. New York State Tax Comm'n*, 760 F.2d 432, 435- 36 (2d Cir. 1985) (same).

20.    In these Cases, the Taxes and Fees likely constitute amounts held in trust, which the Debtors are required to collect and/or hold for payment to the Taxing Authorities.  To the extent these Taxes and Fees constitute "trust fund" taxes, they are not property of the estates under section 541(d) of the Bankruptcy Code.  *See In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 104-05 (Bankr. E.D. Pa.  1987); *see also Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 721–22 (4th Cir. 1998) (stating that funds from various lenders held by closing agent in trust for designated third parties were not property of debtor's estate).  As the Debtors do not have an equitable interest in such Taxes and Fees, the Debtors should be permitted to remit such amounts to the Taxing Authorities as they become due, irrespective of the commencement of the Cases.

### B.  PAYMENT OF THE TAXES AND FEES IS CRUCIAL TO THE DEBTORS' ABILITY TO OPERATE

21.    Any regulatory dispute or delinquency that impacts the Debtors' ability to conduct business in a particular jurisdiction could have a wide-ranging and adverse effect on the Debtors' business operations and ability to maximize the value of the Debtors' estates.  Specifically, the Debtors' failure to remit the Taxes and Fees could adversely affect the Debtors' business operations because, among other things (a) the Taxing Authorities could initiate audits of the Debtors or prevent the Debtors from continuing their businesses which, even if unsuccessful, would unnecessarily divert the Debtors' attention from the process of maximizing the value of the estates; (b) the Taxing Authorities could attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay and pursue other remedies that will harm the Debtors' estates; (c) some of the Taxing Authorities may seek to collect penalties, cancel licenses, or undertake other unfavorable enforcement actions; and (d) certain directors, officers and employees might be subject to personal liability -- even if such a failure to remit such Taxes and Fees was not a result of malfeasance on their part - which would undoubtedly distract these key employees from their

10837365.1

duties related to operating the Debtors' businesses.  In fact, if not paid timely, the Taxing Authorities may take such actions regardless of this chapter 11 filing.  *See, e.g.,* 11 U.S.C. §§ 362(b)(9) (permitting tax audits and assessments) and 362(b)(18) (allowing creation or perfection of liens for property taxes).

22.     The Debtors are continuing to operate their businesses, and it is imperative that the Debtors be allowed to pay all of their Taxes and Fees in order to avoid any disruptions to operations and to maximize the value of the estates.  Accordingly, the Debtors respectfully request the authority to remit the Taxes and Fees as they become due to ensure that the Debtors remain focused on their business operations.

## C.  THE TAXES AND FEES LIKELY CONSTITUTE PRIORITY CLAIMS

23.     The Debtors submit that authorizing payment of the Taxes and Fees is in the best interests of their creditors and estates because substantially all of the Taxes and Fees are likely to constitute priority claims under section 507(a)(8) of the Bankruptcy Code that will be paid in full in these Cases.  Accordingly, the proposed relief will only affect the timing of the payment of the Taxes and Fees and not whether such amounts will be paid.  As such, payment of the Taxes and Fees will not prejudice the rights of general unsecured creditors or other parties in interest.

24.     Moreover, to the extent that such claims are entitled to priority treatment under section 507(a)(8)(B) of the Bankruptcy Code, the respective Taxing Authorities may attempt to assess interest and penalties.  *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss").

25.     Further, the failure to pay certain of the Taxes and Fees may adversely affect the Debtors' ability to maintain their good standing to operate in the jurisdictions in which they do

10837365.1

business, to conduct business in those jurisdictions and to administer the estates for the benefit of creditors.

26.     As such, payment of the Taxes and Fees is in the best interest of the Debtors and their estates, will not harm unsecured creditors and other parties in interest, and will reduce harm and administrative expense to the estates.

27.     Similar relief is routinely granted by courts in this district and elsewhere.  *See, e.g., In re MRRC Hold Co.*, Case No. 24-11164 (CTG) [D.I. 116] (Bankr. D. Del. June 27, 2024); *In re Express, Inc. et al.*, Case No. 24-10831 (KBO) [D.I. 231] (Bankr. D. Del. May 15, 2024); *In re Unconditional Love Inc., et al.*, Case No. 23-11759 (MFW) [D.I. 51] (Bankr. D. Del. Oct. 24, 2023); *In re CraftWorks Parent, LLC,* Case No. 20-10478 (BLS) [D.I. 73] (Bankr. D. Del. Mar. 4, 2020); *In re BL Restaurants Holding, LLC,* Case No. 20-10156 (MFW) [D.I. 183] (Bankr. D. Del. Feb. 26, 2020); *In re Forever 21, Inc.,* Case No. 19-12122 (KG) [D.I. 338] (Bankr. D. Del. Oct. 28, 2019); *In re RUI Holding Corp.,* Case No. 19-11509 (JTD) [D.I. 109] (Bankr. D. Del. Aug 6, 2019).

**D.  PAYMENT OF THE TAXES AND FEES IS WARRANTED UNDER THE DOCTRINE OF NECESSITY**

28.     Courts generally acknowledge that, under appropriate circumstances, they may authorize a debtor to pay (or provide special treatment for) certain prepetition obligations.  *See In re Just for Feet, Inc.,* 242 B.R. 821, 824-25 (Bankr. D. Del.  1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the debtor's business); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y.  1989) (granting the debtor the authority to pay prepetition wages); *Armstrong World Indus., Inc.  v. James A.  Phillips, Inc., (In re James A.  Phillips, Inc.)*, 29 B.R. 391,398 (Bankr. S.D.N.Y.  1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential lien claimants).  When

9

authorizing payments of certain prepetition obligations, courts have relied upon several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code.

29.     Consistent with a debtor's fiduciary duties, where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors," courts have authorized debtors to make such payments under section 363(b) of the Bankruptcy Code. *See In re Ionosphere Clubs, Inc.,* 98 B.R. at 175 (finding that a sound business justification existed to pay prepetition wages); *In re James A. Phillips, Inc.,* 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).

30.     Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to section 105(a) of the Bankruptcy Code.   Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may permit payments of prepetition obligations when such payments are essential to the continued operation of the debtor's business and, in particular, where nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtor's business reorganization plan. *See In re UNR Indus.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); *In re Ionosphere Clubs*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

10837365.1

31.    In addition to the authority granted to a debtor in possession under sections 105(a) and 363(b) of the Bankruptcy Code, courts have developed the "doctrine of necessity" or the "necessity of payment" rule, which originated in the landmark case of *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1882). Since *Miltenberger*, courts have expanded their application of the doctrine of necessity to cover instances of a debtor's reorganization, *see Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (holding, in a hotel reorganization matter, that the court was not "helpless" to apply the rule to supply creditors where the alternative was the cessation of operations), including the United States Court of Appeals for the Third Circuit, which recognized the doctrine in *In re Lehigh & New England Ry. Co.*, 657 F.2d 570,581 (3d Cir. 1981).

32.    In *Lehigh*, the United States Court of Appeals for the Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating that a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also Just for Feet, Inc.*, 242 B.R. at 824-25 (noting that debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

33.    The necessity of payment doctrine is designed to foster the rehabilitation of a debtor in reorganization cases, which courts have recognized is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176; *Just For Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization."); *see also In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code", but "[a]

11

10837365.1

general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (finding that it is appropriate to provide for the "unequal treatment of pre-petition debts when [such treatment is] necessary for rehabilitation....").

34.    Here, payment of the Taxes and Fees is an exercise of sound business judgment and is necessary to maximize the value of the estates for the benefit of creditors. The Debtors are, collectively, a managed services organization, that manages and operates a group of medical aesthetics practices and any disputes that could adversely affect their ability to conduct business in a particular jurisdiction could have wide-ranging and negative effects on the Debtors' operations. If the Debtors do not continue paying the Taxes and Fees when they come due on a timely basis, it is very possible that Taxing Authorities, or those parties who ordinarily collect the Taxes and Fees, may interfere with the Debtors' businesses and the efficient administration of the estates.

**E.  THE COURT SHOULD AUTHORIZE BANKS TO HONOR AND PROCESS PAYMENTS IN ACCORDANCE WITH THIS MOTION**

35.    The Debtors expect to have sufficient funds to pay the amounts described in this Motion with cash flow from operations and with cash collateral or postpetition financing. In addition, the Debtors have implemented controls to ensure that prepetition claims will not be paid except as authorized by the Court and can readily identify checks or wire transfers as relating (or not) to authorized payments. Accordingly, the Debtors believe there is minimal risk that payments not authorized by the Court will be inadvertently made. The Debtors therefore request that the

12

Court authorize and direct the Debtors' banks or other applicable financial institutions, when requested by the Debtors, to receive, process, honor and pay all checks or wire transfers in respect of the relief requested herein, regardless of whether the checks were presented or fund transfer requests were submitted before, on or after the Petition Date, provided that sufficient funds are available in the Debtors' accounts to cover such checks and transfers and that the applicable financial institutions are authorized to rely on the Debtors' designation of any particular check or transfer as being approved by the Interim Order and the Final Order.

## IMMEDIATE AND UNSTAYED RELIEF IS NECESSARY

36.     The Court may grant the relief requested in this Motion within 21 days of the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Bankruptcy Rule 6003. For the reasons stated herein, the relief requested herein is integral to the Debtors' ability to operate their business in the ordinary course, preserve their going concern value and their assets during the immediate postpetition period, and ultimately, maximize the value of their estates for the benefit of all creditors. The lack of such relief during the first 21 days of these cases would severely impair the Debtors' operations at a critical time. Accordingly, the Debtors submit that the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 has been satisfied and that the requested relief should be granted immediately.

37.     The Debtors also seek waiver of the 14-day stay that would be applicable to the relief requested herein "unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to prevent immediate and irreparable harm by continuing to operate without interruption and thereby preserve value for their estates and creditors. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h) and provide for the immediate effectiveness of any relief granted by the Interim Order or Final Order.

13

**RESERVATION OF RIGHTS**

38.     The Debtors expressly reserve their right and defenses with respect to any claims related to the relief sought herein. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim against the Debtors, a waiver of the Debtors' rights with respect to any claim against any other person, a promise to pay any claim or continue any applicable program postpetition, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**NOTICE**

39.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to Firstrust Bank; (c) the holders of the 20 largest claims against the Debtors on a consolidated basis; (d) taxing authorities; and (e) all parties that have requested notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will also be served as required by Local Rule 9013-1(m). The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice is necessary.

14

10837365.1

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and the Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: June 22, 2026                               **RAINES FELDMAN LITTRELL LLP**
        Wilmington, Delaware

                                              */s/ Thomas J. Francella*
                                              Thomas J. Francella, Jr. (No. 3835)
                                              Mark W. Eckard (No. 4542)
                                              824 North Market Street, Suite 805
                                              Wilmington, DE 19801
                                              (302) 772-5803
                                              tfrancella@raineslaw.com
                                              meckard@raineslaw.com

                                              *Proposed Counsel to the Debtors and Debtors in Possession*

15

10837365.1