**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GVO PARTNERS LLC, *et al.*,[1] | ) | Case No. 26-10976-KBO |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING (A) PAYMENT OF PREPETITION WAGES, EMPLOYEE
BENEFITS OBLIGATIONS AND OTHER COMPENSATION, (B) CONTINUATION
OF EMPLOYEE BENFITS PROGRAMS AND PAYMENT OF RELATED
ADMINISTRATIVE OBLIGATIONS; AND (II) GRANTING RELATED RELIEF**

The debtors and debtors-in-possession (the "**Debtors**") in the above-captioned chapter 11 cases (these "**Cases**"), by and through their undersigned counsel, hereby move for the entry of interim and final orders granting the relief described below.  In support of this motion (this "**Motion**"), the Debtors rely on the *Declaration of Joseph Sciamanna in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**")[2] filed concurrently herewith and respectfully represent as follows:

**RELIEF REQUESTED**

1.      The Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "**Interim Order**" and the "**Final Order**"): (i) authorizing, but not directing, the Debtors, in their sole discretion, to (a) pay prepetition Employee Obligations (as defined below) and related expenses arising under or related

---

[1]     The Debtors in these Cases, along with the last four (4) digits of their federal tax identification numbers, are: GVO Partners LLC (5862); GVO Holdings Group LLC (8330), GVO Topco LLC (5638); GVO Urban, LLC (8860); GVO Still Waters, LLC (5823); GVO Sweetgrass, LLC (7775); and Urban Medspa & Weight Loss Center Charlotte, P.C. (7185).  The Debtors' mailing address is 218 Brighton Park Blvd., Suite 101, Summerville, SC 29486.

[2]      Capitalized terms used but not defined herein have the meanings ascribed in the First Day Declaration.

1

to Employee Programs (as defined below) and (b) continue their Employee Programs presently in effect (and as may be amended, renewed, replaced, modified, revised, supplemented, and/or terminated from time to time in the ordinary course of business) and pay related administrative obligations; and (ii) granting related relief.  By this Motion, the Debtors are not requesting authority to pay amounts in excess of any applicable statutory caps under sections 507(a)(4) or (5) of the Bankruptcy Code.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  The Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent such consent, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a) and 541 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

**A.  The Chapter 11 Cases**

5.      On June 16, 2026 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtors are operating their

2

10837472.1

business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have filed a motion requesting joint administration of these Cases pursuant to Bankruptcy Rule 1015(b).  No trustee, examiner, or official committee of unsecured creditors has been appointed in these Cases.

6.      The Debtors are, collectively, a managed services organization, that manages and operates a group of medical aesthetics practices.  Additional information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of Cases, is set forth in the First Day Declaration and is incorporated herein by reference.

**B.  The Employees**

7.      As of the Petition Date, the Debtors employ approximately 30 individuals across (collectively, "**Employees**"), of which 5 are part-time and 25 are full-time.  Most of the Debtors' employees are paid on an hourly basis.  The balance of the Debtors' employees are salaried.  In the ordinary course of business, the Debtors incur obligations and make certain payments, contributions, deductions and withholdings to or on behalf of current and former Employees (the "**Employee Obligations**") under or relating to Wages, Bonus Programs, Business Expenses, PTO, Health Benefits and Other Programs (each as defined below, and collectively, the "**Employee Programs**").[3]

8.      The Employees perform a wide variety of functions, which are mission-critical to the preservation of value and the administration of the Debtors' estates. In many instances, the Employees include personnel who are intimately familiar with the Debtors' business, processes

---

[3]      Certain Employees are subject to individual employment agreements with the Debtors governing the specific terms of those Employees' employment, compensation, and benefits.  Such  terms may differ from those of the Employee Programs described herein.  The Debtors do not seek authority to pay any obligations to Employees under any such employment agreements unless otherwise consistent with the relief requested in this Motion.  The Debtors reserve all of their rights to seek any relief in the future by separate motion with respect to any such employment agreements.

and systems, who have developed relationships with the customers, suppliers and other key counterparties that are essential to the Debtors' business and who cannot be easily replaced. The Debtors believe that the vast majority of Employees rely on their compensation and benefits for daily living expenses and to support their families, and will be irreparably harmed if the Debtors fail to honor their obligations under the Employee Programs. Any such failures are likely to jeopardize the Employees' continued performance and loyalty to the Debtors, and employee turnover in the restaurant industry is generally high.

9.      If the Debtors are unable to satisfy the Employee Obligations, the resulting effect on morale or excess turnover may materially jeopardize the Debtors' ability to operate and preserve going concern value and the administration of these estates. The Debtors believe that the costs associated with the Employee Programs are minimal compared with the risks to their going concern value and harm to the estates if the Employee Obligations are not honored. Consequently, the Debtors respectfully submit that the relief requested herein is necessary and appropriate under the facts and circumstances of these Cases.

**C. Wages**

10.     The Debtors incur obligations to their Employees for wages, salaries and other compensation in the ordinary course (collectively, the "**Wages**"). The pay period for Employees is biweekly, from Thursday to the second following Wednesday, and Wages are then paid on the following Friday.

11.     The Debtors' average bi-weekly gross payroll is expected to be approximately $45,000 for all Employees. The payroll for the period ending on Wednesday June 17, 2026, including employer taxes, was fully funded in full immediately prior to the commencement of these Cases.

**D.   Bonus Programs**

12.    The Debtors also maintain certain bonus programs to incentivize or reward Employee performance, specifically commission-based production bonuses, paid monthly.  No amounts are owing under the bonus plans for prior periods as of the Petition Date.  The Debtors seek authority to continue their commission-based production bonus program and pay such amounts during these Cases.

**E.   Expense Reimbursements**

13.    The Debtors have expense reimbursement policies for certain business expenses that are incurred in the ordinary course by eligible Employees in performing their job functions ("**Business Expenses**").  Such expenses may be for certain preapproved travel, lodging, ground transportation, meals, automobile usage (gas or mileage), phone, internet, among others, and are reimbursed through recurring stipends or reimbursement requests. Each month, the Debtors reimburse a small amount of Business Expenses.  The Debtors estimate that approximately $40,000 of Business Expenses are currently owed to Employees as of the Petition Date, which amount will become due and owing during the Interim Period, and request authority to reimburse such expenses.

14.    The Debtors also utilize corporate credit cards (the "**Corporate Cards**") for certain support center employees with varying charge account limits that are used primarily for ordinary course expenses such as travel and supplies needed for the restaurants.  The Debtors have previously paid amounts incurred on the Corporate Cards as they come due to stay under their credit limit. The Debtors estimate that, as of the Petition Date, approximately $1,489,608 of prepetition expenses is due and owing on the Corporate Cards.  The Debtors do not seek authority to pay these amounts.

10837472.1

**F. Paid Time Off**

15.     Certain Employees are eligible for paid leave or time off for vacation, illness or personal reasons (collectively, "**PTO**") in accordance with company policies as well as federal, state, or local laws.  As of the Petition Date, the Debtors estimate that approximately $80,000 of PTO has been accrued that is subject to payment upon separation under applicable laws.  The Debtors seek authority, but not direction, to honor such earned or accrued but unused PTO, and pay related amounts if and when required by applicable non-bankruptcy law, and to continue to administer such PTO policies in the ordinary course.

16.     In addition to PTO, the Debtors also maintain certain policies for requests by Employees for other time off, whether paid or unpaid, as the result of, among other things, voting time, jury duty, appearance in a court proceeding on behalf of the Debtors, military obligations, inclement weather, family and medical reasons, workers' compensation leave,[4] parental leave, and personal leave. These policies generally do not involve cash expenditures by the Debtors, but certain situations, such as jury or witness duty, may require the Debtors to make payments in accordance with applicable federal or state laws.  These policies, the Debtors' PTO policies, generally require advance notice and approval of appropriate supervising personnel.  The Debtors seek authorization to continue to such policies, and any related payments, in the ordinary course.

**G. Health Benefits**

17.     The Debtors do not provide health care insurance to any of their employees.  Thus, as of the Petition Date, there are no amounts owed in respect of health care insurance programs.

---

[4]     Employees are provided with workers' compensation coverage through programs managed by FrankCrum.  The costs of such programs are incurred and paid by the Debtors in the ordinary course. The Debtors are not separately seeking relief with respect to workers' compensation programs in this Motion.

6

10837472.1

**H.  Deductions, Withholdings and Payroll Taxes**

18.     For each applicable pay period, the Debtors may be obligated from time to time to deduct, directly or indirectly, certain amounts from Employee paychecks, including without limitation garnishments, child support, and similar deductions, as well as pre- and after-tax deductions payable pursuant to certain of the Employee Programs discussed herein (such as an Employee's share of health care insurance premiums, legally ordered deductions and miscellaneous deductions) (collectively, the "**Deductions**"), and forward such amounts to various third-party recipients. The Debtors remit such amounts through Fourth as appropriate.

19.     Federal and state laws require the Debtors to withhold amounts related to federal, state and local income taxes and Social Security and Medicare taxes for remittance to the appropriate federal, state or local taxing authority. The Debtors must then match the withheld amounts from their own funds for Social Security and Medicare taxes and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance (together with withheld amounts, the "**Payroll Taxes**").  The Payroll Taxes are generally processed and forwarded to the appropriate federal, state and local taxing authorities at the same time the Employees' payroll payments are disbursed.  As of the Petition Date, the Debtors have no amounts outstanding on account of prepetition Payroll Taxes, and this amount will become due and owing in the Interim Period. The Debtors respectfully request authority to forward or pay any Deductions or Payroll Taxes as such obligations come due in the ordinary course.

**BASIS FOR RELIEF REQUESTED**

**A.  PAYMENT OF CERTAIN EMPLOYEE OBLIGATIONS IS REQUIRED BY LAW**

20.     The Debtors submit that the Payroll Taxes are largely or entirely comprised of "trust fund" taxes.  Such amounts are held in trust and not part of the Debtors' estates, and are required to be paid. *See* 11 U.S.C. § 541(b), (d); 26 U.S.C. § 7501(a); *see also Begier v. IRS,* 496

7

U.S. 53 (1990) (withholding taxes are property held by a debtor in trust for another and, as such, are not property of the Debtor's estates); *City of Farrell v. Sharon Steel Corp.,* 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its Employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes). Failure to pay could subject the Debtors' directors and officers to personal liability. *See In re DuCharmes & Co.,* 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).

21.     Because such amounts are not property of the Debtors' estates, their application or payment for their intended purposes will not adversely affect the Debtors' estates or their creditors. Even if constituting property of the estate, such payment or application would not prejudice other creditors such amounts have priority under section 507(a)(8) of the Bankruptcy Code.  To prevent potentially irreparable harm to Employee morale and, in certain cases, to comply with the clear and unambiguous requirements of section 541(b)(7) of the Bankruptcy Code, the Debtors desire to apply and remit the Payroll Taxes to the purposes for which such withholdings and deductions were taken.

## B. HONORING THE EMPLOYEE OBLIGATIONS IS A SOUND EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT

22.     Section 363(b) of the Bankruptcy Code permits a debtor to "enter into transactions…in the ordinary course of business" and use estate property "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1). Therefore, the Debtors believe they are permitted to pay all postpetition Wages and amounts due pursuant to the Employee Programs as such actions are in the ordinary course of business. Out of an abundance of caution, however, the Debtors request entry of an order granting the relief requested herein to avoid any disruptions to their business operations.

23.    Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.,* 242 B.R. 174, 153 (D. Del. 1999) (internal citations omitted) (requiring that the debtor show a "sound business purpose" to justify its actions under section 363 of the Bankruptcy Code); *see also In re Phx. Steel Corp.,* 82 B.R. 334, 335-36 (Bankr. D. Del. 1987).

24.    Many of the Employees rely on their full compensation and/or reimbursement of their expenses in order to meet their daily living expenses for themselves and families. These Employees may be exposed to significant financial and healthcare related problems if the Debtors are not permitted to pay and/or honor the Wages and Employee Programs, and related expenses, in the ordinary course of the Debtors' business. The Debtors believe that if they are unable to honor accrued Wages and the Employee Programs described above, employee morale and loyalty will be jeopardized at the very time when the dedication, confidence and cooperation of the Employees is most critical. In addition, bolstering the morale of the Employees and ensuring the uninterrupted availability of their services will assist the Debtors in maintaining a "business as usual" atmosphere to the extent possible and preserving the Debtors' ability to continue to operate their business and preserve relationships with customers and other important constituencies. As the employee turnover rate is high in the restaurant industry generally, the failure to honor accrued Wages and the Employee Programs would likely result in unmanageable turnover for the Debtors.

25.    It is in the best interests of the estates and creditors for the Debtors to continue operations as a going concern. The Debtors have determined, in the sound exercise of their business judgment, that continuing their Employee Programs, including honoring any prepetition obligations as set forth herein, is necessary to continue operating as a going concern and thereby preserve value for their estates and creditors.

### C.  HONORING THE EMPLOYEE OBLIGATIONS IS APPROPRIATE UNDER THE DOCTRINE OF NECESSITY

26.     The Court may also authorize the relief requested herein under its equitable powers and the doctrine of necessity.  Section 105(a) of the Bankruptcy Code authorizes the issuance of "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may permit payments of prepetition obligations prior to confirmation of a plan and emergence from chapter 11 when essential to preserve value and the continued operation of a debtor's business.

27.     The "necessity of payment" doctrine, which has been embraced by the Third Circuit, contemplates that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of corpus." *In re Lehigh & New England Ry. Co.,* 657 F.2d 570, 581 (3d Cir. 1981); *see also In re Penn Cent. Transp. Co.,* 467 F.2d 100, 102 n.1 (3d Cir. 1972) (recognizing necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until its pre-reorganization claims have been paid"); *In re Just for Feet, Inc.,* 242 B.R. 821, 824-25 (D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.,* 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

28.     Although the "doctrine of necessity" predates the Bankruptcy Code, *see Miltenberger v. Logansport Ry. Co.,* 106 U.S. 286, 309 (1882), the modern application of the doctrine of necessity is grounded in specific provisions of the Bankruptcy Code, including sections 105(a), 1107(a) and 1108. *See In re CoServ, L.L.C.,* 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (fiduciary duties implicit in section 1107(a) of the Bankruptcy Code justify the "preplan

10

satisfaction of a prepetition claim" where necessary to preserve going concern value). The doctrine, largely unchanged from the Court's reasoning in *Miltenberger,* is a widely accepted component of bankruptcy jurisprudence. *See In re Just for Feet, Inc.,* 242 B.R. 821, 826 (D. Del. 1999) (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy the debtor's business by refusing to deliver new inventory on the eve of debtor's key sales season); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.),* 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (affirming order authorizing payment of prepetition wages, salaries, expenses and benefits); *In re Payless Cashways, Inc.,* 268 B.R. 543, 546-47 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agreed to provide postpetition trade credit).

29.    For the reasons set forth above, the Debtors submit that honoring the Employee Obligations, including payment of any prepetition obligations as set forth herein, is necessary for their continued operations and to preserve value for their estates and creditors.  Moreover, many such obligations are entitled to priority treatment under sections 507(a)(4) and (5) of the Bankruptcy Code, and the Debtors seek only to pay Employee Obligations within the applicable statutory cap.  Accordingly, the relief requested herein should only affect the timing of payments to the Employees and should not prejudice recoveries for general unsecured creditors.

30.    Courts in this district have approved similar relief in many other instances. *See, e.g., In re MRRC Hold Co., et al.*, Case No. 24-11164 (CTG) [Doc. No. 140] (Bankr. D. Del. July 2, 2024); *In re Express, Inc., et al.,* Case No. 24-10831 (KBO) [Doc. No. 224] (Bankr. D. Del. May 14, 2024); *In re Smart Earth Technologies, LLC, et al.*, Case No. 23-11866 (KBO) [Doc. No. 115] (Bankr. D. Del. Dec. 12, 2023); *In re Unconditional Love Inc., et al.*, Case No. 23-11759 (MFW) [Doc. No. 53] (Bankr. D. Del. Oct. 24, 2023);  *In re Craftworks Parent, LLC*, Case No.

11

20-10475 (BLS) [Doc. No. 69] (Bankr. D. Del. Mar. 4, 2020); *In re BL Restaurants Holdin, LLC*, Case No. 20-10156 (MFW) [Doc. No. 180] (Bankr. D. Del. Feb. 26, 2020); *In re Forever 21, Inc.*, Case No. 19-12122 (KG) [Doc. No. 426] (Bankr. D. Del. Nov. 13, 2019); *In re RUI Holding Corp.*, Case No. 19-11509 (JTD) [Doc. No. 105] (Bankr. D. Del. Aug. 6, 2019).

**D. THE COURT SHOULD AUTHORIZE BANKS TO HONOR AND PROCESS PAYMENTS IN ACCORDANCE WITH THIS MOTION**

31.     The Debtors expect to have sufficient funds to pay the amounts described in this Motion with cash flow from operations and with cash collateral or postpetition financing. In addition, the Debtors have implemented controls to ensure that prepetition claims will not be paid except as authorized by the Court and can readily identify checks or wire transfers as relating (or not) to authorized payments. Accordingly, the Debtors believe there is minimal risk that payments not authorized by the Court will be inadvertently made. The Debtors therefore request that the Court authorize and direct the Debtors' banks or other applicable financial institutions, when requested by the Debtors, to receive, process, honor and pay all checks or wire transfers in respect of the relief requested herein, regardless of whether the checks were presented or fund transfer requests were submitted before, on or after the Petition Date, provided that sufficient funds are available in the Debtors' accounts to cover such checks and transfers and that the applicable financial institutions are authorized to rely on the Debtors' designation of any particular check or transfer as being approved by the Interim Order and the Final Order.

**IMMEDIATE AND UNSTAYED RELIEF IS NECESSARY**

32.     The Court may grant the relief requested in this Motion within 21 days of the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Bankruptcy Rule 6003. For the reasons stated herein, the relief requested herein is integral to the Debtors' ability to operate their business in the ordinary course, preserve their going concern value

and their assets during the immediate postpetition period, and ultimately, maximize the value of their estates for the benefit of all creditors. The lack of such relief during the first 21 days of these Cases would severely impair the Debtors' operations at a critical time. Accordingly, the Debtors submit that the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 has been satisfied and that the requested relief should be granted immediately.

33.     The Debtors also seek waiver of the 14-day stay that would be applicable to the relief requested herein "unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to prevent immediate and irreparable harm by continuing to operate without interruption and thereby preserve value for their estates and creditors. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h) and provide for the immediate effectiveness of any relief granted by the Interim Order or Final Order.

**RESERVATION OF RIGHTS**

34.     The Debtors expressly reserve their right and defenses with respect to any claims related to the relief sought herein. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim against the Debtors, a waiver of the Debtors' rights with respect to any claim against any other person, a promise to pay any claim or continue any applicable program postpetition, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. Without limiting the foregoing, the Debtors reserve the right to evaluate all Employee Programs and to make such modifications, including terminating any particular plan, program, or policy, as may be necessary or appropriate during the pendency of these Cases. Any payment made pursuant to an order of the Court granting the relief requested herein is not intended

13

10837472.1

to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **NOTICE**

35.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to Firstrust Bank; (c) the holders of the 20 largest claims against the Debtors on a consolidated basis;(d) the employees; and (e) all parties that have requested notice pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order entered hereon will also be served as required by Local Rule 9013-1(m). The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

*[ remainder of page intentionally left blank ]*

10837472.1

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter the Interim Order and the Final Order, substantially in the form annexed hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: June 22, 2026                          **RAINES FELDMAN LITTRELL LLP**
      Wilmington, Delaware

                                 */s/ Thomas J. Francella*
                                   Thomas J. Francella, Jr. (No. 3835)
                                   Mark W. Eckard (No. 4542)
                                   824 North Market Street, Suite 805
                                   Wilmington, DE 19801
                                   (302) 772-5803
                                   tfrancella@raineslaw.com
                                   meckard@raineslaw.com

                                   *Proposed Counsel to the Debtors and Debtors in Possession*

15

10837472.1