IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GVO PARTNERS LLC, *et al.*,[1] | ) | Case No. 26-10976-KBO |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) (A) APPROVING THE DEBTORS' PROPOSED FORM
OF ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY
SERVICES, (B) APPROVING THE DEBTORS' PROPOSED PROCEDURES
FOR RESOLVING ADDITIONAL ASSURANCE REQUESTS, AND (C)
PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING
OR DISCONTINUING SERVICES; AND (II) GRANTING RELATED RELIEF**

The debtors and debtors in possession (each, a "**Debtor**" and collectively, the "**Debtors**")
in the above-captioned cases (these "**Cases**"), by and through their undersigned proposed counsel,
hereby move for entry of interim and final orders granting the relief described below.  In support
of this motion (the "**Motion**"), the Debtors rely on the *Declaration of Joseph Sciamanna in Support
of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**")[2] filed concurrently
herewith and respectfully represent as follows:

**RELIEF REQUESTED**

1.      The Debtors respectfully request entry of interim and final orders, the forms
attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "**Interim Order**" and the "**Final
Order**"): (i) (a) approving the Debtors' proposed form of adequate assurance of payment for future

---

[1]      The Debtors in these Cases, along with the last four (4) digits of their federal tax identification numbers, are: GVO Partners LLC (5862); GVO Holdings Group LLC (8330), GVO Topco LLC (5638); GVO Urban, LLC (8860); GVO Still Waters, LLC (5823); GVO Sweetgrass, LLC (7775); and Urban Medspa & Weight Loss Center Charlotte, P.C. (7185).  The Debtors' mailing address is 218 Brighton Park Blvd., Suite 101, Summerville, SC 29486.

[2]      Capitalized terms used but not defined herein have the meaning ascribed in the First Day Declaration.

1

10837420.1

utility services to utility providers (the "**Utility Providers**"), (b) approving the Debtors' proposed procedures for resolving requests for adequate assurance in substantially the form proposed in the Interim Order (the "**Adequate Assurance Procedures**"), and (c) prohibiting the Utility Providers from altering, refusing, or discontinuing services; and (ii) granting related relief.

2.      The Debtors further respectfully request that the Court schedule a final hearing on the Motion within 30 days of the Petition Date (defined below), or as soon thereafter as the Court's schedule permits.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of these Cases and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief sought herein are sections 105(a), 366, 1107(a), and 1108 of title 11 of the United States Code, as amended (the "**Bankruptcy Code**"), Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013-1(m) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

5.      Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment with respect to the Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

10837420.1

## BACKGROUND

### I.   CHAPTER 11 CASES

6.      On June 16, 2025 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors have filed a motion requesting joint administration of these Cases pursuant to Bankruptcy Rule 1015(b).  No trustee, examiner, or official committee of unsecured creditors has been appointed in these Cases.

7.      The Debtors are, collectively, a managed services organization, that manages and operates a group of medical aesthetics practices.  Additional information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of Cases, is set forth in the First Day Declaration and is incorporated herein by reference.

### II.   THE UTILITY SERVICES

8.      In connection with the operation of their business and management of their properties, the Debtors obtain internet, telecommunications, electricity, natural gas, water, waste management, and other similar services (collectively, the "**Utility Services**" and, the obligations arising therefrom, the "**Utility Obligations**") from the Utility Providers.  A list of the Utility Providers and the respective Utility Services they provide (the "**Utility Provider List**") is attached

10837420.1

as **Exhibit C** to the Motion.[3]  The relief requested herein pertains to all Utility Providers providing

Utility Services to the Debtors and is not limited to those listed on the Utility Provider List.[4]

9.      The Debtors require Utility Services to properly operate and serve customers and

for administrative and operational purposes at their practice and office locations.  In addition, the

Utility Services are essential in enabling the Debtors to maintain their corporate operations and

properly support their practice and office locations.  Should any Utility Provider refuse or

discontinue service, even for a brief period, the Debtors' business operations would be severely

disrupted.  Such disruption would adversely affect customer goodwill and employee relations,

which, in turn, would jeopardize the Debtors' reorganization efforts.

10.      Based on the twelve months preceding the Petition Date, the Debtors expect to incur

average monthly charges of approximately $10,814.94 for Utility Services going forward.

### PROPOSED ADEQUATE ASSURANCE AND RELATED PROCEDURES

**I.      PROPOSED ADEQUATE ASSURANCE**

11.      The Debtors intend to pay all timely undisputed postpetition obligations owed to

the Utility Providers.  The Debtors believe that cash held by the Debtors and cash generated in the

ordinary course of business will provide sufficient liquidity for the Debtors to pay their postpetition

Utility Obligations in the ordinary course of business.

---

[3]      The inclusion of any entity on, or the omission of any entity from, **Exhibit C** is not an admission by the Debtors that such entity is, or is not, a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect to any such determination.  Additionally, although this **Exhibit C** is intended to be comprehensive and the Debtors have tried to identify all of their Utility Providers, the Debtors may have inadvertently omitted one or more Utility Providers. By this motion, the Debtors request relief applicable to all Utility Providers, regardless of whether such Utility Provider is specifically identified on this **Exhibit C**.

[4]      Pursuant to certain of the Debtors' lease agreements, certain utilities are billed directly to the applicable landlords and passed through to the Debtors as part of the Debtors' lease payments. The Debtors submit that payment of such amounts is subject to, and will be treated in accordance with, section 365 of the Bankruptcy Code.

10837420.1

12.     While the Debtors believe that the foregoing may be sufficient to satisfy the requirements under section 366 of the Bankruptcy Code, as additional assurance of payment, the Debtors propose to (a) establish a newly created, interest-bearing, segregated account (the "**Utility Deposit Account**") at a bank that has executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware; and (b) within 20 days of the Petition Date, place a deposit of $5,000 (the "**Utility Deposit**"), into the Utility Deposit Account for the benefit of each Utility Provider (the "**Proposed Adequate Assurance**").  The Utility Deposit is an amount equal to approximately one-half of the Debtors' monthly costs for Utility Services going forward.

13.     The Utility Deposit Account will be maintained by the Debtors for the duration of these Cases to serve as adequate assurance of performance.  During the pendency of these Cases, the Debtors propose to adjust the amount in the Utility Deposit Account to reflect factors including: (a) termination of Utility Services by the Debtors, regardless of any Additional Assurance Requests, and (b) agreements reached with Utility Providers.  These adjustments will permit the Debtors to maintain the Utility Deposit Account that consistently provides the Utility Providers with a deposit on account of such services as described herein.

## II.     PROPOSED ADEQUATE ASSURANCE PROCEDURES

14.     While the Debtors do not believe that any adequate assurance beyond that proposed in this Motion is necessary, the Debtors submit that any Utility Provider that is dissatisfied with the Proposed Adequate Assurance should be required to make a request for additional assurance (an "**Additional Assurance Request**") pursuant to the following Adequate Assurance Procedures:

> a)      Within two business days after the date of entry of the Interim Order, the Debtors will serve a copy of the Interim Order to the Utility Providers on the Utility Provider List.

10837420.1

b)       If any amount on account of postpetition Utility Services is unpaid, and remains unpaid beyond any applicable grace period, the applicable Utility Provider may request a disbursement from the Utility Deposit Account by giving written notice to counsel for the Debtors, any official committee appointed in these Cases, and to the Office of the United States Trustee.  The Debtors shall honor such request within 30 days after the date of receipt of such request, unless the Debtors and the requesting Utility Provider resolve the issues raised in such request without resorting to disbursement from the Utility Deposit Account.  To the extent a Utility Provider receives a disbursement from the Utility Deposit Account, the Debtors shall replenish the Utility Deposit Account in the amount so disbursed.

c)       If a Utility Provider is not satisfied with the Proposed Adequate Assurance and seeks additional adequate assurance of payment, it must serve an Additional Assurance Request upon (i) the undersigned counsel; (ii) the Office of the United States Trustee; and (iii) counsel to any official committee appointed in these Cases (collectively, the "**Adequate Assurance Notice Parties**") so that it is received on or before 4:00 p.m. (ET) within 14 days of service of this Order.

d)       Each Additional Assurance Request must (a) be made in writing, (b) set forth the amount and form of additional assurance of payment requested, (c) set forth the type of Utility Services, any account numbers, and the location for which Utility Services are provided, (d) include a summary of the Debtors' payment history to such Utility Provider relevant to the affected account(s), including whether the Utility Provider holds any deposits or other security, and if so, in what amount, and (e) set forth why the Utility Provider believes the Proposed Adequate Assurance is insufficient.

e)       Upon the Debtors' receipt of an Additional Assurance Request, the Debtors shall promptly negotiate with the requesting Utility Provider and resolve its Additional Assurance Request.

f)       Should the Debtors be unable to reach a mutual resolution with respect to an Additional Assurance Request, the Debtors shall, upon reasonable notice, calendar the matter (the "**Adequate Assurance Dispute**") for the next regularly scheduled omnibus hearing and file a motion to determine the adequacy of assurance of payment pursuant to section 366(c)(3) of the Bankruptcy Code with respect to that particular Utility Provider.

g)       Any Utility Provider that makes an Additional Assurance Request is prohibited from altering, refusing, or discontinuing service, including as a result of unpaid charges for prepetition services, pending resolution of such Additional Assurance Request by agreement or order of this Court.

h)       The Debtors may, in their discretion, resolve any Additional Assurance Request by mutual agreement with the requesting Utility Provider without further notice to the Court or any other party in interest and may, in connection with any such agreement, provide a Utility Provider with additional adequate assurance of future payment, including, but not limited to, a cash deposit, prepayment, letter of credit, and/or other forms of security, without further order of the Court to the extent that the Debtors believe that such

6

additional assurance is reasonable in the exercise of their business judgment, and the Debtors may, by mutual agreement with the objecting Utility Provider and without further order of the Court, reduce the Utility Deposit by an amount not exceeding the requesting Utility Provider's estimated two-week utility expense.

i)       Upon the closure of any of the Debtor's practice locations or offices and the discontinuance of the Utility Services associated therewith, or the termination of Utility Services independent thereof, the Debtors may, in their discretion and without further order of the Court, reduce the Utility Deposit by an amount not exceeding, for each of the Utility Services being discontinued, the amount of the Utility Deposit then attributable to the applicable Utility Provider; *provided* that for any Utility Provider for which the Utility Deposit is reduced, the Debtors shall have paid such Utility Provider in full for any outstanding postpetition Utility Services before reducing the Adequate Assurance Deposit.

15.     The Debtors submit that the Utility Deposit to be held in the Utility Deposit Account constitutes adequate assurance to the Utility Providers.  Accordingly, the Debtors request that, from and after entry of the Interim Order, any Utility Provider that fails to serve upon the Adequate Assurance Notice Parties an Additional Assurance Request or file an Objection (as defined below) to this Motion, as described below, will be deemed to have (a) received adequate assurance of payment as required by section 366 of the Bankruptcy Code and be prohibited from altering, refusing, or discontinuing Utility Services, including as a result of unpaid charges for prepetition Utility Services, and (b) waived any right to seek additional adequate assurance during the course of these Cases, except as provided in section 366(c)(3) of the Bankruptcy Code.

III.    **SUBSEQUENT MODIFICATIONS OF THE UTILITY PROVIDER LIST AND PROCEDURES FOR SUBSEQUENTLY IDENTIFIED UTILITY PROVIDERS**

16.     Although the Debtors have made a diligent and good faith effort to identify all of the Debtors' Utility Services on the Utility Provider List, certain Utility Providers may have been inadvertently omitted.  To the extent the Debtors identify additional Utility Providers, the Debtors seek authority, in their sole discretion, to amend or supplement the Utility Provider List.  The Debtors will file any such amendments and serve copies of the Motion, and the Interim Order or

7

the Final Order (as applicable) on such newly identified Utility Providers (each a "**Subsequently Identified Utility Provider**").

17.     The Debtors request that any entered orders relating to the Motion be binding on all Utility Providers, regardless of when any particular Utility Provider was added to the Utility Provider List.

18.     In addition, the Debtors propose that any Subsequently Identified Utility Provider has the right to make an Additional Assurance Request on the Adequate Assurance Notice Parties within 14 days after it receives notice of the Interim Order or Final Order (the "**Additional Assurance Request Deadline**").   Any such request must be actually received by the Adequate Assurance Notice Parties by the Additional Assurance Request Deadline.  If no timely Additional Assurance Request is filed, the Debtors propose that the provisions of the Interim Order or Final Order, whichever is in effect, apply to the Subsequently Identified Utility Provider.   Should any Subsequently Identified Utility Provider make an Additional Assurance Request, the Debtors request that such Subsequently Identified Utility Provider be prohibited from discontinuing, altering, or refusing service to the Debtors, including as a result of unpaid charges for prepetition services, pending resolution of such request.

### IV.     PROHIBITION ON ALTERING, REFUSING, OR DISCONTINUING SERVICE

19.     Pending the entry of Interim and Final Orders with respect to the Motion and pending resolution of any Additional Assurance Request, the Debtors respectfully request that the Utility Providers, including the Subsequently Identified Utility Providers, be prohibited from (a) discriminating against the Debtors, (b) altering, refusing, or discontinuing service to the  Debtors, or (c) requiring payment of a deposit or receipt or any other security for continued service other than the Utility Deposit, as a result of the Debtors' bankruptcy filings or any outstanding prepetition invoices.

10837420.1

**V.      REQUEST FOR FINAL HEARING**

20.     The Debtors request that a final hearing on this Motion be held within 30 days of the Petition Date to ensure that, if a Utility Provider argues that it can unilaterally refuse service to any of the Debtors on the thirty-first (31st) day after the Petition Date, the Debtors will have the opportunity, to the extent necessary, to request that the Court make such modifications to the Adequate Assurance Procedures in time to avoid any potential termination of Utility Services.

**BASIS FOR RELIEF REQUESTED**

**I.      THE PROPOSED ADEQUATE ASSURANCE PROVIDES UTILITY PROVIDERS WITH ADEQUATE ASSURANCE OF PAYMENT**

21.     Section 366(a) of the Bankruptcy Code provides that a "utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title" or for late payment for service provided before an order for relief.  11 U.S.C. § 366(a).  Section 366(b) of the Bankruptcy Code goes on to provide, however, that the utility provider may "alter, refuse, or discontinue service if neither the trustee nor the debtor . . . furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date."  *Id.* § 366(b).  Section 366(c)(2) of the Bankruptcy Code further provides that in a case filed under chapter 11 of the Bankruptcy Code, a utility may alter or discontinue service if, "during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility."  *Id.* § 366(c)(2).  The Bankruptcy Code defines "assurance of payment" to include, among other things, "a cash deposit[.]"  *Id.* § 366(c)(l)(A)(i).

22.     Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of a debtors' ability to pay.  *See, e.g.*, *In re Great Atl. & Pac. Tea Co.*, No. 11-CV-1338, 2011 WL 5546954, at \*5 (S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve

9

an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full"); *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires . . . 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'") (citation omitted), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997); *In re Anchor Glass Container Corp.,* 342 B.R. 872, 875 (Bankr. M.D. Fla. 2005) (section 366 "does not require a guarantee of payment").

23.     When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision as to whether the Utility Provider will be subject to an unreasonable risk of nonpayment.  *In re Keydata Corp.*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (stating that the meaning of adequate assurance of payment "depends upon the facts and circumstances of each case, keeping in mind the intent of Congress to protect the utility company while preventing discrimination against the debtor") (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 82-83 (Bankr. S.D.N.Y. 2002) (finding that "the heart of the inquiry . . . is the examination of the totality of the circumstances to make an informed judgment as to whether or not the utilities would be subject to an unreasonable risk of payment").

24.     Courts have recognized that, in determining the requisite level of adequate assurance, however, "a bankruptcy court must 'focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" *Va. Elec. & Power Co.*, 117 F.3d at 650 (citation omitted); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming the bankruptcy court's ruling that no utility deposits were necessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security

10

10837420.1

to suppliers who already are reasonably protected"). Additionally, the Court is not bound by state or local regulations that set adequate assurance of payment postpetition. *In re Begley,* 41 B.R. 402, 405-06 (E.D. Pa. 1984); *see also In re Monroe Well Serv., Inc.,* 83 B.R. 317, 321-22 (Bankr. E.D. Pa. 1988) (noting that without utility service, the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it"). Accordingly, demands by a Utility Provider for a guarantee of payment should be refused when the Debtors' specific circumstances already afford adequate assurance of payment.

25. Here, the Debtors respectfully submit that the Utility Providers are adequately assured against any risk of nonpayment for future services. The Debtors are placing a deposit equal to approximately one half of the Debtors' average monthly cost of Utility Services into the Utility Deposit Account for the benefit of any Utility Provider that requests its pro-rata portion of the Utility Deposit. *See Great Atl. & Pac. Tea Co.*, 2011 WL 5546954, at *2, 5, 10 (affirming bankruptcy court's finding that utility providers were adequately assured payment through a two-week cash deposit). The deposit and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course provide assurance of the Debtors' payment of their future obligations. Accordingly, the Proposed Adequate Assurance provides the Utility Providers with adequate assurance of payment consistent with the requirements of sections 366(b) and 366(c)(l)(A)(i) of the Bankruptcy Code, to the extent applicable.

26. Moreover, the Proposed Adequate Assurance comports with the policy underlying section 366 of the Bankruptcy Code, which is to protect debtors from utility service cutoffs upon the filing of a bankruptcy case, while also providing utility companies with adequate assurance that the debtor will pay for postpetition services. *See* H.R. Rep. No. 95-595, at 350 (1978),

10837420.1

*reprinted in* 1978 U.S.C.C.A.N. 5963, 6306; *see also In re Jones,* 369 B.R. 745, 748 (B.A.P. 1st Cir. 2007) ("The purpose of § 366 is 'to prevent the threat of termination from being used to collect pre-petition debts while not forcing the utility to provide services for which it may never be paid.'") (quoting *In re Begley,* 760 F.2d 46, 49 (3d Cir. 1985)).

## II. THE DEBTORS' PROPOSED ADEQUATE ASSURANCE PROCEDURES PROPERLY BALANCE THE INTERESTS OF THE UTILITY PROVIDERS AND THOSE OF THE DEBTORS AND THEIR ESTATES

27. Uninterrupted Utility Services are essential to the Debtors' ongoing business operations and, hence, the overall success of these Cases. Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted. Such disruption would adversely affect customer goodwill and employee relations, which, in turn, would jeopardize the Debtors' reorganization efforts. Accordingly, it is essential that the Utility Services continue uninterrupted during these Cases.

28. The Debtors' proposed Adequate Assurance Procedures provide the Utility Providers with a fair and orderly process for seeking modification of the Proposed Adequate Assurance while protecting the Debtors from being forced to address numerous additional assurance requests in a disorganized manner and at a time when the Debtors' efforts could be more productively focused on the seamless continuation of their operations in chapter 11.

29. Here, notwithstanding the Debtors' belief that the Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Providers believe they have under sections 366(b) and (c)(2) are wholly preserved by the Adequate Assurance Procedures. *See In re Circuit City Stores, Inc.,* No. 08-35653, 2009 WL 484553, at *6 (Bankr. E.D. Va. Jan. 14, 2009) (adopting similar adequate assurance procedures and holding that "notwithstanding [a] determination on an interim basis that the adequate assurance proposed by the Debtors constitute[d] sufficient adequate assurance under § 366(b), [the] utility companies . . . [could still]

12

exercise their rights under § 366(c)(2), in accordance with the Procedures established by the Court"). The Utility Providers still may choose, in accordance with the established Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id.* at *6. On the other hand, the Adequate Assurance Procedures avoid a haphazard and chaotic process whereby each Utility Provider could make an extortionate, last-minute demand for adequate assurance, which the Debtors would be pressured to pay under the threat of losing critical Utility Services. *See id.*

30.     Because the Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366 of the Bankruptcy Code, the Court should grant the relief requested herein. Similar procedures have been approved by courts in this district. *See, e.g., In re Basic Fun, Inc.*, Case No. 24-11432 (CTG) (Bankr. D. Del. July 29, 2024) [Docket No. 113] (approving adequate assurance deposit to utility provider equal to 50% of debtors' average monthly cost for utility services on a final basis); *In re One Table Restaurant Brands, LLC*, Case No. 24-11553 (KBO) (Bankr. D. Del. July 19, 2024) [Docket No. 59] (approving adequate assurance deposit equal to the value of two weeks of utility services on an interim basis); *In re Express, Inc.*, Case No. 24-10831 (KBO) (Bankr. D. Del. Apr. 24, 2024) [Docket No. 233] (approving adequate assurance deposit equal to one-half of the debtor's average monthly utility expenses on a final basis); *Craftworks Parent, LLC*, Case No. 20-10475 (BLS) (Bankr. D. Del. Mar. 4, 2020) [Docket No. 72] (approving adequate assurance deposit equal to one-half of the debtor's average monthly utility expenses on an interim basis); *BL Restaurants Holding, LLC*, Case No. 20-10156 (MFW) (Bankr. D. Del. Feb. 28, 2020) [Docket No. 226] (approving adequate assurance deposit equal to one-half of debtor's average monthly utility expenses on a final basis); *In re Forever 21, Inc.*, Case No. 19-12122 (KG) (Bankr. D. Del. Oct. 1, 2019) [Docket No. 110] (same); *In re Blackhawk Mining LLC*,

13

Case No. 19-11595 (LSS) (Bankr. D. Del. Aug. 9, 2019) [Docket No. 74] (same); *In re RUI Holding Corp.*, Case No. 19-11509 (JTD) (Bankr. D. Del. July 9, 2019) [Docket No. 42] (same); *In re Z Gallerie, LLC*, Case No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) [Docket No. 54] (same); *In re Things Remembered, Inc.*, Case No. 19-10234 (KG) (Bankr. D. Del. Feb. 26, 2019) [Docket No. 69] (same).

31.     Further, the Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

## IMMEDIATE AND UNSTAYED RELIEF IS NECESSARY

32.     The Court may grant the relief requested in this Motion within 21 days of the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003.  For the reasons stated herein, the relief requested herein is integral to the Debtors' ability to operate their business in the ordinary course, preserve their going concern value and their assets during the immediate postpetition period, and ultimately, maximize the value of their estates for the benefit of all creditors.  The lack of such relief during the first 21 days of these Cases would severely impair the Debtors' operations at a critical time.  Accordingly, the Debtors submit that the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 has been satisfied and that the requested relief should be granted immediately.

33.     The Debtors also seek waiver of the 14-day stay that would be applicable to the relief requested herein "unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to prevent immediate and irreparable harm by continuing to operate without interruption and thereby preserve value for their estates and creditors.  Accordingly, the Debtors respectfully request that

14

the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h) and provide for the immediate effectiveness of any relief granted by the Interim Order or Final Order.

## RESERVATION OF RIGHTS

34.    The Debtors expressly reserve their right and defenses with respect to any claims related to the relief sought herein.  Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim against the Debtors, a waiver of the Debtors' rights with respect to any claim against any other person, a promise to pay any claim or continue any applicable program postpetition, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## NOTICE

35.    The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for Firstrust Bank; (c) the holders of the 20 largest claims against the Debtors on a consolidated basis; (d) all parties that have requested notice pursuant to Bankruptcy Rule 2002; and (e) the Utility Providers .  Notice of this Motion and any order entered on this Motion will be served as required by Local Rule 9013-1(m).  The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

15

10837420.1

**CONCLUSION**

**WHEREFORE**, the Debtors respectfully request that this Court enter the Interim Order and the Final Order, substantially in the forms annexed hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: June 22, 2026  
      Wilmington, Delaware

**RAINES FELDMAN LITTRELL LLP**

 */s/ Thomas J. Francella*  
Thomas J. Francella, Jr. (No. 3835)  
Mark W. Eckard (No. 4542)  
824 North Market Street, Suite 805  
Wilmington, DE 19801  
(302) 772-5803  
tfrancella@raineslaw.com  
meckard@raineslaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

16

10837420.1