**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GVO PARTNERS LLC, *et al.*,[1] | ) | Case No. 26-10976-KBO |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND**
**FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A)**
**CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B)**
**HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C)**
**MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE CERTAIN**
**INTERCOMPANY TRANSACTIONS; AND (II) GRANTING RELATED RELIEF**

The debtors and debtors in possession (each, a "**Debtor**" and collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), by and through their undersigned proposed counsel, hereby move for entry of interim and final orders granting the relief described below. In support of this motion (the "**Motion**"), the Debtors rely on the *Declaration of Joseph Sciamanna in Support of Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**")[2] filed concurrently herewith and respectfully represent as follows:

**RELIEF REQUESTED**

1.      The Debtors seek entry of interim and final orders, the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "**Interim Order**" and the "**Final Order**"): (a) authorizing, but not directing, the Debtors to (i) continue to operate their Cash Management System (as defined below), (ii) pay any prepetition or postpetition amounts outstanding on account

---

[1]      The Debtors in these Cases, along with the last four (4) digits of their federal tax identification numbers, are: GVO Partners LLC (5862); GVO Holdings Group LLC (8330), GVO Topco LLC (5638); GVO Urban, LLC (8860); GVO Still Waters, LLC (5823); GVO Sweetgrass, LLC (7775); and Urban Medspa & Weight Loss Center Charlotte, P.C. (7185). The Debtors' mailing address is 218 Brighton Park Blvd., Suite 101, Summerville, SC 29486.

[2]      Capitalized terms used but not defined herein have the meaning ascribed in the First Day Declaration.

1

10837404.1

of the Bank Claims (as defined below), (iii) maintain existing Business Forms (as defined below) in the ordinary course of business, and (iv) continue intercompany transactions consistent with historical practice; and (b) granting related relief.  In addition, the Debtors respectfully request that the Court schedule a final hearing on the Motion within 30 days of the Petition Date (defined below), or as soon thereafter as the Court's schedule permits.

## JURISDICTION AND VENUE

2. This Court has jurisdiction to consider and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are sections 105(a), 345(b), 363, 364, and 503(b) of title 11 of the United States Code, as amended (the "**Bankruptcy Code**"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

4. Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order or judgment with respect to the Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

**I.     CHAPTER 11 CASES**

5. On the date hereof (the "**Petition Date**"), each Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtors are operating their business

2

and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors have filed a motion requesting joint administration of Cases pursuant to Bankruptcy Rule 1015(b).  No trustee, examiner, or official committee of unsecured creditors has been appointed in Cases.

6.     The Debtors are, collectively, a managed services organization, that manages and operates a group of medical aesthetics practices.  Additional information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of Cases, is set forth in the First Day Declaration and is incorporated herein by reference.

## II.     THE CASH MANAGEMENT SYSTEM

7.     The Debtors operate an integrated system of Bank Accounts (as defined below) to facilitate the collection and disbursement of funds across their organization (the "**Cash Management System**").  The Cash Management System enables transactions and transfers among the various Bank Accounts required to effect the Debtors' collections and disbursements.  Further, the Cash Management System enables monitoring of collection and disbursement activity and facilitates the Debtors' reporting through the development of timely and accurate information.  The Debtors' accounting department maintains daily oversight of the Cash Management System and implements cash management controls for receiving, processing, and releasing funds.  Additionally, the Debtors' accounting and treasury personnel regularly reconcile the Debtors' books and records to ensure that all transfers are accounted for properly.

8.     The Debtors estimate that cash collections will average approximately $4.1 million over the next thirteen (13) weeks, including cash receipts from practices, credit and debit card receipts, and gift card receipts.  These cash collections are processed and distributed to various accounts, including disbursement accounts for such obligations as vendor payments and payroll.

10837404.1

The Debtors estimate that total ordinary course disbursements will average approximately $280,000 per week.

9.      Due to the nature of the Debtors' business, including cash collections from three practices with an aggregate of seven practices, and the disruption to the business that would result if the Debtors were required to close their existing Bank Accounts, it is critical that the Cash Management System remains in place on a postpetition basis.  Accordingly, pursuant to sections 105(a) and 363(c) of the Bankruptcy Code, the Debtors seek authorization to maintain their existing Bank Accounts and continue using their Cash Management System.

A.      **Bank Accounts**

10.     As of the Petition Date, the Cash Management System includes a total of 8 bank accounts (the "**Bank Accounts**") at Bank of America ("**BofA**"), Firstrust Bank ("**Firstrust**"), and South State Bank ("**South State**") (each, a "**Bank**" and collectively, the "**Banks**") and their functions are summarized in the following table and described further below:

| Account | Bank | Acct No. (Last 4 Digits) | Description of Account |
|---|---|---|---|
| Depository Account | BofA | 1361 | GVO Cultura account – Not in use |
| Depository Account | BofA | 1206 | GVO Partners account for general operations and deposits |
| Depository Account | BofA | 2803 | GVO Still Waters account for operations and collections |
| Depository Account | BofA | 5567 | GVO Sweetgrass account for operations and collections |
| Depository Account | BofA | 1925 | GVO Urban account for operations and collections |
| Depository Account | Firstrust | 0406 | GVO Holdings account for distributions and deposits |

10837404.1

| Account | Bank | Acct No. (Last 4 Digits) | Description of Account |
|---|---|---|---|
| Depository Account | South State | 7772 | GVO Sweetgrass loan and deposit account |

### B. Collections

11.    The Debtors collect practice-level cash receipts into three operating accounts, BofA (1925), BofA (5567), and BofA (2803) by manual deposits at least three times per week.  Credit card receipts, and third-party patient financing receipts, are also collected in the other depository accounts as noted above.  The Debtors use various credit card processors, including point-of-sale terminals (Zenoti EMR, Square, and Meevo EMR) as well as online processors (Stripe and RepeatMD).  Further, third-party financing platforms (Cherry, CareCredit, Alle, and Aspire) are used by eligible patients.

12.    The Debtors also collect revenues from insurance payments, which are typically received 2-4 weeks after a service is provided.  Practice-level credit card sales and third-party financing sales are typically received within 2-3 days.  Doctor Payments are received weekly, while practice-level credit card sales are received within 2-3 days.  The Debtors also generate collections from practice-level credit card sales and gift card sales, and may receive checks from time to time, and these receipts are deposited into three operating accounts, BofA (1925), BofA (5567), and BofA (2803).

### C. Disbursements

13.    Disbursements to fund the Debtors' operations are made from four operating accounts, BofA (19250, BofA (5567), BofA (2803), and BofA (1206), which provide for payroll, check disbursements, and ACH disbursements, respectively.

## III.   BANK CLAIMS

14.   In the ordinary course, the Debtors incur periodic service charges and other fees to the Banks, or other merchant service providers or processors in connection with utilizing and maintaining the Cash Management System (collectively, "**Bank Claims**").  Additional charges may also be incurred by the Debtors from time to time in connection with (a) checks that have been dishonored or returned for insufficient funds in the applicable account, (b) any reimbursement or other payment obligations, such as overdrafts, arising under any agreements governing the Bank Accounts, including, without limitation, any prepetition cash management agreements or treasury services agreements, and (c) any credit card processing fees or other related payment obligations, in each case subject to the limitations of any applicable account agreements.  The Debtors incur credit card processing fees each month on average, of approximately $12,000.  The Debtors estimate that not more than $5,000 of Bank Claims are currently due and owing as of the Petition Date, all of which will be payable within the first 30 days of Cases.  To maintain the integrity of their Cash Management System, the Debtors request authority, but not direction, to pay all prepetition Bank Fees and to continue to pay Bank Fees in the ordinary course on a postpetition basis.

## IV.   THE BUSINESS FORMS

15.   The Debtors use various pre-printed documents (the "**Business Forms**"), such as forms or letterhead, in the ordinary course of business.  For the avoidance of doubt, the Business Forms do not include checks, which are not pre-printed for the Debtors.  Because the Business Forms were used prepetition, they do not reference the Debtors' current status as debtors in possession.  Nonetheless, most parties doing business with the Debtors will be aware of the Debtors' status as debtors in possession as a result of the publicity surrounding Cases and the notice of commencement served on parties-in-interest.

10837404.1

16. Requiring the Debtors to change existing Business Forms would unnecessarily distract the Debtors from their restructuring efforts and impose needless expenses on the estates. Thus, the Debtors request that they be authorized to use their existing Business Forms without placing a "Debtor In Possession" legend on each, until their existing stock is depleted. Once the Debtors have exhausted their existing stock, any new check stock or subsequently printed checks or forms will bear the designation "Debtor In Possession" with the joint case number. To the extent that forms are prepared electronically, the Debtors will add a "Debtor In Possession" designation to such forms within 14 days of the Petition Date.

## V.   INTERCOMPANY TRANSFERS

17. In the ordinary course of business and operation of the Cash Management System, the Debtors routinely engage in certain limited intercompany financial transactions with each other, which in turn give rise to intercompany receivables and payables. Intercompany transfers are handled by BofA CashPro.

18. The Debtors maintain, and will continue to maintain, records of these transfers of cash and bookkeeping entries on a postpetition basis, and can ascertain, trace, and account for these transfers. The Debtors request authority to continue entering into such ordinary course intercompany transactions. The Debtors are not seeking authority to pay or settle amounts outstanding on account of any prepetition intercompany transactions during the pendency of these bankruptcy cases. Together with the Debtors' own bookkeeping, BofA will permit them, with the assistance of their advisors, to track the balance of all prepetition and postpetition intercompany transactions accurately.

19. Because the Debtors engaged in such transactions on a regular basis prepetition and such transactions are common for similar businesses, the Debtors believe that they may continue such transactions in the ordinary course under section 363(c)(1) of the Bankruptcy Code, without

7

court approval.   Nonetheless, out of an abundance of caution, the Debtors herein seek express authority, but not direction, to continue engaging in such intercompany transactions.   Consistent with their prepetition practice, the Debtors will maintain records of all transfers and can ascertain, trace, and account for all of intercompany transactions.   The Debtors request that such transactions be granted administrative-expense priority status, which will facilitate the orderly and efficient operation of the Debtors' enterprise.

## BASIS FOR RELIEF REQUESTED

**I.    MAINTAINANCE OF THE EXISTING ACCOUNTS AND CASH MANAGEMENT SYSTEM IS AUTHORIZED UNDER SECTION 363**

20.    Although the Debtors maintain the Bank Accounts as part of an established Cash Management System, the *Operating Guidelines for Chapter 11 Cases* (the "**U.S. Trustee Guidelines**") require that the Debtors, as debtors in possession, take certain actions with respect to their prepetition Bank Accounts in order for the United States Trustee for Region 3 (the "**U.S. Trustee**") to supervise the administration of these Cases.   These requirements are designed to draw a clear line of demarcation between prepetition and postpetition transactions and operations and prevent the inadvertent postpetition payment of prepetition claims.   The Debtors submit, however, that a modification of certain requirements is warranted.

21.    Enforcement of the U.S. Trustee's requirements without modification would significantly disrupt the Debtors' business.   Indeed, as explained in more detail above, the Bank Accounts comprise an established Cash Management System that the Debtors must maintain to ensure collections and disbursements occur.   The Debtors' Cash Management System allows the Debtors to centrally manage cash and includes the necessary accounting controls to enable the Debtors to trace funds through the system and ensure that all transactions are adequately

10837404.1

documented and readily ascertainable.  While these Cases are pending, the Debtors will continue to maintain detailed records reflecting all transfers of funds.

22.     Accordingly, to avoid delays in payments to administrative creditors, to ensure a smooth transition into chapter 11, and to maximize the value of their estates, the Debtors submit that (a) they should be permitted to continue to maintain their existing Bank Accounts, open new accounts, and close existing accounts as needed;[3] and (b) the requested relief should extend to any new accounts by providing that the new accounts are deemed to be Bank Accounts and are similarly subject to the rights, obligations, and relief granted by this Court.

23.     Both as part of the Motion and in other motions that have been concurrently filed, the Debtors are requesting authority to pay, in their sole discretion, certain prepetition obligations. With respect to certain of these obligations, the Debtors may have issued checks prior to the Petition Date that have yet to clear the banking system.  The Debtors intend to inform the Banks which such checks should be so honored.  Therefore, the Debtors request that the Banks be authorized and directed to rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored.  The Debtors further request that the orders specify that the Banks shall not have any liability to any party for relying on such representations.  This relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular prepetition check may be honored in accordance with an order by the Court or otherwise.

24.     Allowing the Debtors to use their prepetition Cash Management System and engage in related "routine transactions" comports with applicable provisions of the Bankruptcy Code.  In particular, section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use

---

[3]     The Debtors will provide the U.S. Trustee with notice of any such changes.

9

10837404.1

property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of this section is to provide a debtor with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court. *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (citation omitted); *In re Vision Metals, Inc.,* 325 B.R. 138, 145 (Bankr. D. Del. 2005) (same). The authority granted by section 363(c)(1) extends to a debtor in possession's continued use of its customary cash management system and, thus, supports the relief requested. *See, e.g.*, *In re Nellson Nutraceutical, Inc.,* 369 B.R. 787, 796 (Bankr. D. Del. 2007) (noting that "courts have shown a reluctance to interfere" in a debtor's making of routine, day-to-day business decisions); *Vision Metals,* 325 B.R. at 142 ("[W]hen a chapter 11 debtor in possession continues to operate its business, as permitted by section 1108, no court authorization is necessary for the debtor to enter transactions that fall within the ordinary course of its business.").

25. To the extent that use of the existing Cash Management System falls outside the ordinary course of business, such use is permitted by sections 363(b)(1) and 105(a) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides that this Court may "issue any order . . . that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. *Id.* § 105(a). As described herein, the continuation of the Cash Management System is necessary and appropriate and will allow the Debtors to expeditiously carry out Cases, while still providing protections to the Debtors' creditors

10837404.1

by ensuring that the Debtors' cash is used appropriately and in accordance with the applicable provisions of the Bankruptcy Code and this Court's orders.

## II.    MAINTAINING THE EXISTING CASH MANAGEMENT SYSTEM WILL NOT HARM PARTIES IN INTEREST

26.    The Debtors' continued use of their Cash Management System will facilitate the Debtors' transition into chapter 11 by, among other things, avoiding administrative inefficiencies, expenses, and distraction associated with disrupting this system and minimizing delays in the payment of postpetition obligations.  Parties in interest will not be harmed by the Debtors' maintenance of the Cash Management System, including maintenance of the Bank Accounts and the intercompany transactions.  The Debtors have appropriate mechanisms in place to ensure that Debtor entities will not make unauthorized payments for prepetition obligations.  Specifically, with the assistance of their advisors, the Debtors have implemented internal control procedures that prohibit payments for prepetition debts without the prior approval of the Debtors' accounting department.  In light of such protective measures, the Debtors submit that maintaining the Cash Management System is in the best interests of their estates and creditors.

## III.    AUTHORIZING THE DEBTORS TO CONTINUE USING DEBIT, WIRE, AND ACH TRANSFERS IS WARRANTED

27.    The Debtors request that the Court grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtors to make all disbursements by check.  The Debtors conduct a large number of transactions on a daily basis through ACH transfers and other similar methods.  If the Debtors' ability to conduct transactions by debit, wire, ACH transfer, or other similar methods is impaired, the Debtors' day-to-day activities may be unnecessarily disrupted, and the estates will incur additional costs.  The Debtors maintain records of all electronic disbursements and are able to account for such payments the same as if they were made by check.

Therefore, the Debtors submit that authorizing the continuation of using debit, wire and ACH transfers is warranted.

28.     Courts in this district have granted relief substantially similar to that requested in this Motion.  *See, e.g., In re Basic Fun, Inc*., *et al.*, Case No. 24-11432 (CTG) [Docket No. 116] (Bankr. D. Del. July 29, 2024); *In re DermTech, Inc*., Case No. 24-11378 (JTD) [Docket No. 88] (Bankr. D. Del. July 15, 2024); *In re MRRC Hold Co., et al*., Case No. 24-11164 (CTG) [Docket No. 137] (Bankr. D. Del. July 2, 2024); *In re Express, Inc., et al*., Case No. 24-10831 (KBO) [Docket No. 235] (Bankr. D. Del. May 15, 2024); *In re Smart Earth Technologies, LLC, et al*., Case No. 2311866 (KBO) [Docket No. 117] (Bankr. D. Del. Dec. 12, 2023); *In re Unconditional Love Inc., et al.*, Case No. 23-11759 (MFW) [Docket No. 54] (Bankr. D. Del. Oct. 24, 2023).

## IV.     THE COURT SHOULD AUTHORIZE THE DEBTORS TO HONOR CERTAIN PREPETITION OBLIGATIONS RELATED TO THE CASH MANAGEMENT SYSTEM

29.     Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors seek authority, in their sole discretion, to pay and/or reimburse the Banks in the ordinary course of business for any Bank Claims arising prior to, on, or after the Petition Date.

30.     Additionally, in most, if not all circumstances, the Banks would be entitled to setoff or recoup fees related to the Bank Accounts based on their account agreements with the Debtors or applicable law.  Thus, by authorizing the Debtors to pay or honor such prepetition obligations, the Court will enable the Debtors to normalize operations and avoid the disruption that would otherwise occur if the Bank Accounts were frozen pending payment or resolution of disputes regarding the priority of claims or rights of recoupment.

31.     Courts in this district have granted debtors similar relief in numerous other complex chapter 11 cases.  *See, e.g.*, *In re BL Restaurants Holding, LLC,* Case No. 20-10156 (MFW) (Bankr. D. Del. Feb. 26, 2020) [Docket No. 179]; *In re Forever 21, Inc.,* Case No. 19-12122 (KG)

12

(Bankr. D. Del. Oct. 28, 2019) [Docket No. 334]; *In re RUI Holding Corp.,* Case No. 19-11509 (JTD) (Bankr. D. Del. Aug. 6, 2019) [Docket No. 104]; *In re CMTSU Liquidation, Inc.,* Case No. 17- 10772 (BLS) (Bankr. D. Del. Apr. 28, 2017) [Docket No. 137].

## V.        THE COURT SHOULD AUTHORIZE THE DEBTORS TO CONTINUE TO USE EXISTING BUSINESS FORMS AND CHECKS

32.     To minimize expenses to their estates, the Debtors also seek authorization to continue using the Business Forms existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors in possession.  Modifying existing Business Forms would be burdensome and expensive and would confer no corresponding benefit upon those dealing with the Debtors, most of whom, as noted above, will be aware of the commencement of Cases.  The Debtors therefore request authorization to use their existing Business Forms without adding a "Debtor in Possession" or similar legend.  The Debtors will obtain new check stock bearing the designation "Debtor in Possession" after depleting their current check stock.  To the extent that Business Forms and checks are prepared electronically, the Debtors will add a "Debtor In Possession" designation to such Business Forms and checks within 14 days of the Petition Date.

33.     Courts have allowed debtors to use their prepetition business forms without the "debtor in possession" label in similarly situated chapter 11 cases in this district.  *See, e.g., In re Basic Fun, Inc., et al.*, Case No. 24-11432 (CTG) (Bankr. D. Del. July 29, 2024) [Docket No. 116] (approving use of prepetition business forms); *In re MRRC Hold Co., et al.*, Case No. 24-11164 (CTG) (Bankr. D. Del. July 2, 2024) [Docket No. 137]; *In re CalAmp Corp., et al.*, Case No. 24-11136 (LSS) (Bankr. D. Del. June 26, 2024) [Docket No. 102]; *In re BL Restaurants Holding, LLC*, Case No. 20-10156 (MFW) (Bankr. D. Del. Feb. 26, 2020) [Docket No. 179]; *In re Forever 21, Inc.*, Case No. 19-12122 (KG) (Bankr. D. Del. Oct. 28, 2019) [Docket No. 334]; *In re RUI Holding Corp.*, Case No. 19-11509 (JTD) (Bankr. D. Del. Aug. 6, 2019) [Docket No. 104].

10837404.1

## VI.     CAUSE EXISTS TO MODIFY CERTAIN REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE

34.     Section 345(a) of the Bankruptcy Code authorizes a debtor in possession to make deposits or investments of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).  For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety, "unless the court for cause orders otherwise." *Id.* § 345(b).  Alternatively, the debtor may require the entity to deposit governmental securities pursuant to 31 U.S.C. § 9303.[4]  Additionally, under the U.S. Trustee Guidelines, debtors in possession must, among other things, close prepetition bank accounts and open new "debtor in possession" operating, payroll, and tax accounts at one or more authorized depositories.

35.     The majority of the Bank Accounts comply with the requirements of section 345(b) of the Bankruptcy Code.  All of the Debtors' Banks have executed a Uniform Depository Agreement with the U.S. Trustee and are designated as authorized depositories pursuant to the U.S. Trustee Guidelines.  All of the Debtors' active Bank Accounts are insured by the Federal Deposit Insurance Corporation to the extent provided by law.  Thus, the Debtors believe that any funds that are deposited in these Bank Accounts are secure.

36.     To the extent that the Cash Management System does not strictly comply with section 345 of the Bankruptcy Code, the Debtors seek a waiver of the deposit and investment

---

[4]     Section 9303 of title 31 provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may instead provide an eligible obligation, designated by the Secretary of the Treasury, as an acceptable substitute for a surety bond. *See* 31 U.S.C. § 9303.

10837404.1

requirements set forth therein.  Courts may waive compliance with section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines for "cause."  In evaluating whether "cause" exists, courts have considered a number of factors, including:

(a)    the sophistication of the debtor's business;

(b)    the size of the debtor's business operations;

(c)    the amount of the investments involved;

(d)    the bank ratings (Moody's and Standard & Poor) of the financial institutions where the debtor in possession funds are held;

(e)    the complexity of the case;

(f)    the safeguards in place within the debtor's own business for ensuring the safety of the funds;

(g)    the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

(h)    the benefit to the debtor;

(i)    the harm, if any, to the debtor;

(j)    the harm, if any, to the estate; and

(k)    the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case.

*See In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).  Here, these factors warrant a modification of the requirements of section 345 of the Bankruptcy Code to the extent the Cash Management System does not already strictly comply with its requirements.

37.    The Debtors request that they be permitted to maintain their Bank Accounts in accordance with their existing practices, for a 45-day period commencing upon entry of the Interim

15

Order, without prejudice to the Debtors' right to seek further modifications or extensions of time. Congress recognized that strict compliance with the requirements of section 345(b) in large chapter 11 cases such as these is not only unnecessary, but may indeed be inconsistent with section 345(a), which permits a debtor in possession to make such investments of money of the estate "as will yield the maximum reasonable net return on such money." Thus, in 1994, to avoid "needlessly handcuff[ing] larger, more sophisticated debtors," Congress amended section 345(b) to provide that its strict investment requirements may be waived or modified if the Court so orders "for cause." 140 Cong. Rec. H10767 (daily ed. Oct. 4, 1994) (statement of Rep. Brooks).

38.     Courts in this district have granted temporary waivers of section 345(b) requirements in cases of similar size and complexity, and the Debtors submit that such a temporary waiver is appropriate here. *See, e.g.*, *In re GNC Holdings, Inc.*, Case No. 20-11662 (KBO) (Bankr. D. Del. June 25, 2020) (granting 45-day extension); *In re BL Restaurants Holding, LLC,* Case No. 20-10156 (MFW) (Bankr. D. Del. Feb. 26, 2020) [Docket No. 47] (granting 30-day extension); *In re Avenue Stores, LLC*, Case No. 19-11842 (LSS) (Bankr. D. Del. August 20, 2019) [Docket No. 44] (granting 30-day extension).

## VII.    THE COURT SHOULD AUTHORIZE THE DEBTORS TO CONTINUE INTERCOMPANY TRANSACTIONS AND GRANT ADMINISTRATIVE EXPENSE PRIORITY STATUS TO THE RELATED CLAIMS

39.     The Debtors' funds move through the Cash Management System as described above. In the ordinary course as part of the Cash Management System, intercompany transactions occur between and among the Debtors and at any given time there may be balances owing by one Debtor to another Debtor.[5] The Debtors track all fund transfers in their accounting system and can

---

[5]     Because the Debtors engage in such transactions on a regular basis and such transactions are common among enterprises like it, the Debtors submit that the transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code, but seek this Court's express authority to engage in such transactions on a postpetition basis out of an abundance of caution.

16

ascertain, trace, and account for all such intercompany transactions previously described. The Debtors, moreover, will continue to maintain records of such intercompany transactions. If the intercompany transactions were to be discontinued, the Cash Management System and related administrative controls could be disrupted to the Debtors' and their estates' detriment. Because these transactions represent extensions of intercompany credit made in the ordinary course of business that are an essential component of the Cash Management System, the Debtors respectfully request the authority to continue conducting the intercompany transactions in the ordinary course of business without need for further Court order.

40.     In addition, because these transactions in the ordinary course of business represent extensions of intercompany credit that are an essential component of the Cash Management System, the Debtors further request that, pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all postpetition payments on account of postpetition intercompany transactions between or among the Debtors that give rise to intercompany claims be accorded administrative expense status, which would result in an administrative expense claim in favor of the applicable Debtor payor. This relief ensures that each entity receiving transfers continues to bear responsibility for such ordinary course transactions, thereby protecting the transferor entity and its respective estate.

## IMMEDIATE AND UNSTAYED RELIEF IS NECESSARY

41.     The Court may grant the relief requested in this Motion within 21 days of the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003. For the reasons stated herein, the relief requested herein is integral to the Debtors' ability to operate their business in the ordinary course, preserve their going concern value and their assets during the immediate postpetition period, and ultimately, maximize the value of their estates for the benefit of all creditors. The lack of such relief during the first 21 days of Cases

17

10837404.1

would severely impair the Debtors' operations at a critical time.  Accordingly, the Debtors submit that the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 has been satisfied and that the requested relief should be granted immediately.

42.     The Debtors also seek waiver of the 14-day stay that would be applicable to the relief requested herein "unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to prevent immediate and irreparable harm by continuing to operate without interruption and thereby preserve value for their estates and creditors.  Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h) and provide for the immediate effectiveness of any relief granted by the Interim Order or Final Order.

## **RESERVATION OF RIGHTS**

43.     The Debtors expressly reserve their right and defenses with respect to any claims related to the relief sought herein.  Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim against the Debtors, a waiver of the Debtors' rights with respect to any claim against any other person, a promise to pay any claim or continue any applicable program postpetition, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **NOTICE**

44.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to Firstrust; (c) Banks (d) the holders of the 20 largest claims against the Debtors on a consolidated basis; and (e) all parties that have requested

18

10837404.1

notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered on this Motion will be served as required by Local Rule 9013-1(m).  The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that this Court enter the Interim Order and the Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as may be just and proper.

Dated:  June 22, 2026
       Wilmington, Delaware

**RAINES FELDMAN LITTRELL LLP**

*/s/ Thomas J. Francella*
Thomas J. Francella, Jr. (No. 3835)
Mark W. Eckard (No. 4542)
824 North Market Street, Suite 805
Wilmington, DE 19801
(302) 772-5803
tfrancella@raineslaw.com
meckard@raineslaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

10837404.1