**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GVO PARTNERS LLC, *et al.*,[1] | ) | Case No. 26-10976 (KBO) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A)
AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL; (B) GRANTING
ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTY; (C)
SCHEDULING A FINAL HEARING; AND (D) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**")

hereby submit this motion (this "**Motion**") for the entry of an interim order, substantially in the

form attached hereto as Exhibit A (the "**Proposed Interim Order**"), pursuant to sections 105, 361,

362, 363, and 552 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 4001 of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "**Local Rules**"), (a) authorizing the Debtors to use Cash Collateral (as

defined below) subject to the terms and conditions set forth in the Proposed Interim Order,

(b) granting and affirming the adequate protection given to Firstrust (as defined below), (c)

scheduling a final hearing on this Motion (the "**Final Hearing**"), and (d) granting related relief. In

support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of

Joseph Sciamanna in Support of Chapter 11 Petitions and First Day Motions* (the "**First Day**

---

[1]     The Debtors in these Cases, along with the last four (4) digits of their federal tax identification numbers, are: GVO Partners LLC (5862); GVO Holdings Group LLC (8330), GVO Topco LLC (5638); GVO Urban, LLC (8860); GVO Still Waters, LLC (5823); GVO Sweetgrass, LLC (7775); and Urban Medspa & Weight Loss Center Charlotte, P.C. (7185).  The Debtors' mailing address is 218 Brighton Park Blvd., Suite 101, Summerville, SC 29486.

**Declaration**"), filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 506(c), and 507 of the United States Code, as amended (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 4001-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

3.      Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final order or judgment with respect to the Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

4.      On June 16, 2026 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have filed a motion requesting joint administration of

these Cases pursuant to Bankruptcy Rule 1015(b).  No trustee, examiner, or official committee of unsecured creditors has been appointed in these Cases.

5.      The Debtors are, collectively, a managed services organization, which manages and operates a group of medical aesthetics practices.  Additional information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of Cases, is set forth in the First Day Declaration and is incorporated herein by reference.

## PREPETITION SECURED DEBT OBLIGATIONS

### A.      The Firstrust Loans

6.      GVO Holdings Group LLC ("**GVO Holdings**") is the borrower under three separate loans from Firstrust, of which all other debtors are guarantors.  As of January 2026, Firstrust asserts that the aggregate amount owed under all three loans is $9,979,767.75, as follows:

7.      As of June 20, 2023, Holdings, as borrower, and Firstrust, as lender, entered into a loan agreement for a principal amount of $1,900,000 (the "**Initial Firstrust Loan**").  The obligations under the Initial Firstrust Loan are jointly and severally guaranteed by each of the other Debtors and are secured by first priority liens in substantially all of the assets of the Debtors.  As of January 21, 2026, Firstrust asserted the aggregate amount outstanding under the Initial Firstrust Loan to be $1,693,826.03.  Further unpaid amounts, including interest, fees, or expenses have continued to accrue since January 21, 2026.

8.      As of August 28, 2023, Holdings, as borrower, and Firstrust, as lender, entered into a loan agreement for a principal amount of $4,850,000 (the "**Second Firstrust Loan**").  The obligations under the Second Firstrust Loan are jointly and severally guaranteed by each of the other Debtors and are secured by first priority liens in substantially all of the assets of the Debtors.  As of January 21, 2026, Firstrust asserted the aggregate amount outstanding under the Second

Firstrust Loan to be $4,450,858.25. Further unpaid amounts, including interest, fees, or expenses have continued to accrue since January 21, 2026.

9.      As of March 29, 2024, Holdings, as borrower, and Firstrust, as lender, entered into a loan agreement for a principal amount of $4,100,000 (the "**Third Firstrust Loan**"). The obligations under the Third Firstrust Loan are jointly and severally guaranteed by each of the other Debtors and are secured by first priority liens in substantially all of the assets of the Debtors. As of January 21, 2026, Firstrust asserted the aggregate amount outstanding under the Third Firstrust Loan to be $3,851,700.90. Further unpaid amounts, including interest, fees, or expenses have continued to accrue since January 21, 2026.

**B.      The SouthState Loan**

10.      Effective as of August 13, 2025, Debtor GVO Sweetgrass, LLC and nondebtors Sweetgrass Plastic Surgery, LLC, and Dennis Schimpf, PC (now known as Craig Blum, PC) executed and delivered the Promissory Note dated August 13, 2025 (the "SouthState Note"), in the principal amount of $380,000, to SouthState Bank, National Association ("SouthState"). As of the date hereof, the aggregate amount outstanding under the SouthState Loan is approximately $340,814.31 in principal amount, plus any unpaid interest, fees, expenses or other amounts due thereunder or incurred in connection therewith. Pursuant to the Commercial Security Agreement dated August 13, 2025, SouthState holds a security interest in substantially all assets of the SouthState Borrowers, the Debtors believe that SouthState has failed to perfect its security interest with respect to any assets of the Debtors or that any such interest was not timely perfected and is subject to avoidance.

**C.      Merchant Cash Advance Loans**

11.      Certain Debtors are party to merchant cash advance loans (each, an "**MCA**") that are described below. The Debtors believe that the MCAs are usurious, are not enforceable or are

4

subject to subordination, and that the Debtors have claims for damages against the respective MCA lenders.  While the MCA lenders may purport to have security interests in some or all of the Debtors' assets, none have perfected any security interest in any of the Debtors' assets, or such interest was not timely perfected and is subject to avoidance.

### 1.    GVO Still Waters

12.    GVO Still Waters, LLC ("**GVO Still Waters**") and EBF Holdings, LLC d/b/a Everest Business Funding ("**Everest**") are parties to the Revenue Based Financing Agreement dated April 28, 2026 (as later amended, restated or modified, the "**First Everest Loan**"), pursuant to which EBF asserts that GVO Stillwaters is indebted to Everest in the amount of $79,326.60.

13.    GVO Still Waters and Monday Funding LLC ("**Monday Funding**") are parties to the Standard Merchant Cash Advance Agreement dated April 30, 2026 (the "**Monday Funding Loan**"), pursuant to which Monday Funding asserts that GVO Stillwaters is indebted to Monday Funding in the amount of $31,305.

14.    GVO Still Waters and SBFS, LLC ("**SBFS**") are parties to a digital loan agreement entered into in April 2026 (the "**SBFS Loan**"), pursuant to which SBFS asserts that GVO Stillwaters is indebted to SBFS in the amount of $40,000.

### 2.    GVO Sweetgrass

15.    GVO Sweetgrass and Family Funding Group LLC ("**Family Funding**") are parties to the Standard Merchant Cash Advance Agreement dated May 12, 2026 (the "**Family Funding Loan**"), pursuant to which Family Funding asserts that GVO Stillwaters is indebted to Family Funding in the amount of $27,000.

### 3. GVO Urban Medspa & Weight Loss Center

16. GVO Urban Medspa & Weight Loss Center and Retro Advance Inc. ("**Retro Advance**") are parties to the Future Receivable Sale and Purchase Contract dated May 14, 2026 (the "**First Retro Loan**"), pursuant to which Retro Advance asserts that GVO Urban Medspa & Weight Loss Center is indebted to Retro Advance in the amount of $138,553.36.

17. GVO Urban Medspa & Weight Loss Center and Retro Advance are parties to the Future Receivable Sale and Purchase Contract dated May 27, 2026 (the "**Second Retro Loan**"), pursuant to which Retro Advance asserts that GVO Urban Medspa & Weight Loss Center is indebted to Retro Advance in the amount of $74,000.

### D. MCA Settlement Agreement

18. The Debtors, Dennis Schimpf PC d/b/a GVO Sweetgrass Plastic Surgery, Joseph Sciamanna, and Unique Funding Solutions LLC ("**UFS**") are parties to the Settlement Agreement dated March 31, 2026 (the "**UFS Settlement**"), pursuant to which UFS asserts that the Debtors are indebted UFS in the amount of $331,668.63.

### THE DEBTORS' IMMEDIATE NEED FOR USE OF CASH COLLATERAL

19. The Debtors have cash on hand and are generating revenue from operations as shown in the budget attached as **Exhibit 1** to the Proposed Interim Order (the "**Budget**"). Such assets may constitute "cash collateral" within the meaning of 11 U.S.C. § 363(a) (such property, the "**Cash Collateral**"). As of the Petition Date, only Firstrust has a valid and perfected lien in such collateral that is not subject to avoidance.

20. It is essential that the Debtors obtain authority to use the Cash Collateral derived from their operations and claimed as collateral by relevant prepetition secured parties. The Cash Collateral will be used to pay for expenses identified in the Budget. Such expenses include, but

are not limited to, employee payroll and benefits, general operational expenses (including maintenance and utilities), taxes, and other obligations related to the Debtors' business and administrative expenses of the bankruptcy estate. Importantly, the Debtors believe that the use of Cash Collateral (in conjunction with their other unencumbered liquid assets) will be sufficient to fund their operations and the costs of these Cases for some weeks without the need for debtor-in-possession financing.

21. As set forth more fully in the First Day Declaration, the Debtors' management and advisors have concluded that the best strategy for maximizing the value of the Debtors' estates for the benefit of their stakeholders is through a prompt and orderly sale of the Debtors' businesses and/or assets pursuant to section 363 of the Bankruptcy Code (any such transaction, a "**Sale**"). In connection with pursuing such a Sale, the Debtors and their professionals believe that continuing the Debtors' businesses as a going concern is of paramount importance in order to generate the highest possible offers.

22. Accordingly, the reasons justifying the Debtors' use of Cash Collateral during the course of these cases are legion and compelling. Absent such relief, the Debtors will be unable to preserve and maximize the value of their assets in anticipation of a Sale, which would result in the erosion of value of the Debtors' assets or necessitate the Debtors obtaining expensive postpetition financing. Therefore, authorizing the Debtors to use Cash Collateral pending the Final Hearing is in the best interests of the Debtors' estates and their creditors (including Firstrust).

23. The Debtors propose to grant replacement liens to Firstrust (collectively, the "**Adequate Protection Liens**"), solely to the extent of any diminution in value of the Prepetition Collateral resulting from (a) the Debtor's use of cash collateral, (b) the use, sale, or lease of the Prepetition Collateral (other than cash collateral) pursuant to section 363(c) of the Bankruptcy

Code, and (c) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, in the same priority, validity, force, extent, status of perfection (if any), and effect as the Prepetition Liens they replace, effective as of the Petition Date without the necessity of Firstrust taking any further action, upon the right, title, and interest in the following property of the Debtor: (i) all Prepetition Collateral of Firstrust, including all proceeds, profits, rents, and products thereof; and (ii) property acquired by the Debtor after the Petition Date, which is of the same nature, kind, and character as the Prepetition Collateral, and all proceeds, profits, rents, and products thereof.

24.     Additionally, Firstrust shall also be granted as, and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the amount of any diminution in value of the Prepetition Collateral in these Cases (the "**Adequate Protection Superiority Claim**"), which shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, as and to the extent provided in Bankruptcy Code section 507(b).

25.     The Debtors submit that, by continuing to operate as going concerns rather than commencing a forced liquidation, and by providing the Adequate Protection Liens and Adequate Protection Superpriority Claims set forth above, Firstrust will not be harmed by the Debtors' use of Cash Collateral as outlined herein.

## **RELIEF REQUESTED**

26.     By this Motion, the Debtors request that the Court enter the Proposed Interim Order (a) authorizing the Debtors' use of Cash Collateral, subject to the terms and conditions set forth therein; (b) scheduling a Final Hearing; and (c) granting related relief.

27.     By this Motion, the Debtors do not concede the validity, priority, extent of, or perfection of the Prepetition Liens in any Prepetition Collateral or other property, including the

Cash Collateral. Without limiting the foregoing, the Debtors reserve all of their rights with respect to section 552 of the Bankruptcy Code and whether any lien of Firstrust extends to the proceeds of the Debtors' postpetition labor and services to customers.  This Motion seeks authority to use Cash Collateral only to the extent that it exists, and with adequate protection of any interests of Firstrust therein by the Adequate Protection Liens and Adequate Protection Superpriority Claims.

28.　　Bankruptcy Rule 4001(d) provides that the Court may fix the time within which objections to the approval of an agreement relating to cash collateral and adequate protection pursuant to section 363 of the Bankruptcy Code must be filed. In addition, the Court is empowered to conduct an expedited preliminary hearing on such a motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the debtor's estate. *See* Bankruptcy Rule 4001(d).

29.　　For the avoidance of doubt, the Debtors (as well as any creditors' committee appointed in these Cases or other parties-in-interest that may have standing under applicable law) reserve the right to dispute that Firstrust holds a valid, enforceable, perfected, and/or unavoidable security interest in and/or liens upon the Cash Collateral and Prepetition Collateral or other property of the Debtors, including any Cash Collateral derived from the Debtors' ongoing business operations. Nothing in this Motion, the Proposed Interim Order or any proposed final order shall act to confirm, acknowledge, or ratify the validity, perfection, or amount of Firstrust's Prepetition Liens on any of the Debtors' property, nor shall the Debtors' rights be impaired to seek to impose additional security interests or liens on any of the Prepetition Collateral or other property, whether senior or junior to the Prepetition Liens, nor act as a waiver of any claims against Firstrust or of any of the Debtors' rights under sections 506(c) or 552(b) of the Bankruptcy Code. Nothing herein seeks any "rollover" of any prepetition debt to constitute a postpetition debt, relief from the

automatic stay, nor to divest the Debtors of any discretion in the formulation of a plan or the administration of these estates in any way.

## BASIS FOR RELIEF

30.     The Debtors' use of property of their estates is governed by Bankruptcy Code section 363. Section 363(c)(1) provides in pertinent part that:

> If the business of the debtor is authorized to be operated under section … 1108 … of this title and unless the court orders otherwise, the trustee may enter into transactions … in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

31.     Bankruptcy Code section 363(c)(2) establishes a special requirement with respect to "cash collateral" by providing that a trustee or debtor in possession may not use, sell, or lease "cash collateral" under subsection (c)(1) unless: "(A) each entity that has an interest in such collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

32.     Firstrust asserts (or may assert) that the Debtors' revenues generated from their postpetition operations in the ordinary course of business constitutes "cash collateral" under the Bankruptcy Code.  Even absent Firstrust's consent to use of Cash Collateral, the Debtors' use of the Cash Collateral is necessary to maintain and maximize the value of the Debtors' assets and estates during the pendency of these Cases (including in pursuit of a Sale) for the benefit of all parties in interest, including Firstrust.

33.     Without the use of the Cash Collateral requested by this Motion, the Debtors will suffer immediate and irreparable harm, their businesses may cease operating, and the going-concern value of the Debtors' businesses may not be realized pursuant to a Sale or other form of

10

reorganization. The alternatives are (a) a "fire sale" of the Debtors' assets with the loss of going-concern value, or (b) the Debtors' incurrence of postpetition financing on less favorable terms that results in the encumbrance of the Debtors' unencumbered property, thereby reducing assets available for distribution to the other stakeholders.

34.     It is well-established that a bankruptcy court should, whenever possible, resolve issues in favor of allowing a debtor to continue its business as a going concern. Courts have recognized that "[a] debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild. Without the availability of cash to meet daily operating expenses … the congressional policy favoring rehabilitation over economic failure would be frustrated." *Chrysler Credit Corp. v. Ruggiere* (*In re George Ruggiere Chrysler-Plymouth, Inc.*), 727 F.2d 1017, 1019 (11th Cir. 1984); *see also N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 528 (1984) ("The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources.").

35.     Accordingly, courts regularly authorize the use of cash collateral to enhance or preserve the debtor's going concern value. *See, e.g., In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("[T]here is no question that the property would be improved by the proposed renovations and that an increase in value will result. In effect, a substitution occurs in that the money spent for improvements will be transferred into value. This value will serve as adequate protection for [the creditor's] secured claim.").

36.     Bankruptcy Rule 4001(b) permits a court to approve a debtor's request for use of cash collateral during the fourteen-day period following the filing of a motion requesting such authorization, "only … as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Bankruptcy Rule 4001(b)(2). In analyzing requests for granting interim

relief under this rule, courts generally apply the same business judgment standard applicable to other business decisions. *See, e.g., In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Col. 1985) (applying the business judgment standard in analyzing an interim request to incur postpetition financing); *In re Ames Dep't Stores Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (same). After the fourteen-day period, the request for use of cash collateral is not limited to those amounts necessary to prevent destruction of the debtor's business, and, instead, a debtor is entitled to use cash collateral that it believes prudent to the operation of its business. *See, Simasko*, 47 B.R. at 449; *Ames Dep't Stores*, 115 B.R. at 36.

37.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use cash collateral unless, "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Further, section 363(e) of the Bankruptcy Code provides, in pertinent part, that "on request of an entity that has an interest in property … proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Examples of adequate protection are provided in section 361 of the Bankruptcy Code and include, but are not limited to: (a) lump sum or periodic cash payments to the extent that such use will result in a decrease in value of such entity's interest in the property; (b) provisions for an additional or replacement lien to the extent that the use of the property will cause a decrease in the value of such entity's interest in the property; and (c) such other relief as will result in the realization by the entity of the indubitable equivalent of such entity's interest in the property. See 11 U.S.C. § 361.

38.     In *Swedeland Development Group*, the Third Circuit pointedly noted that the purpose of adequate protection "is to insure that the creditor receives the value for which he bargained prebankruptcy." *Resolution Trust Corp. v. Swedeland Dev. Grp., Inc.* (*In re Swedeland Dev. Grp., Inc.*), 16 F.3d 552, 564 (3d Cir. 1994) (quoting *MBank Dallas, N.A. v. O'Connor* (*In re O'Connor*), 808 F.2d 1393, 1396 (10th Cir. 1987)); *see also Shaw Indus., Inc. v. First Nat'l Bank of Pa.* (*In re Shaw Indus., Inc.*), 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003) ("The purpose of providing 'adequate protection' is to insure that a secured creditor receives in value essentially what he bargained for."); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (noting that the application of adequate protection "is left to the vagaries of each case, … but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (internal citation omitted), *rev'd on other grounds*, 89 B.R. 336 (S.D.N.Y. 1988). The Third Circuit has held that adequacy of the protection provided, "depends directly on how effectively it compensates the secured creditor for loss of value" caused by the priming lien granted to a new lender. *Swedeland Dev. Grp.*, 16 F.3d at 564 (quoting *In re Am. Mariner Inds., Inc.*, 734 F.2d 426, 432 (9th Cir. 1984)).

39.     Therefore, adequate protection must be determined on a case-by-case basis, with a focus on protecting a secured creditor from diminution in the value of its interest in the particular collateral during the use period. *See In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990); *see also Delbridge v. Production Credit Assoc. & Federal Land Bank*, 104 B.R. 824, 827–28 (E.D. Mich. 1989) (assessing whether secured creditors interest was adequately protected considering flow of cash in and out of estate); *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988) (considering adequate protection to compensate secured creditor for "use, depreciation,

destruction or other caused reduction in value" of collateral); *In re Beker Indus. Corp.*, 58 B.R. 725, 736–37 (Bankr. S.D.N.Y. 1986) (same).

40.     A secured creditor is adequately protected when ***either*** (a) a sufficient equity cushion in the collateral exists to protect the secured creditor ***or*** (b) the level of the secured creditor's collateral is not decreasing over time. *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (reasoning that a secured creditor was adequately protected and debtor was authorized to use cash collateral where level of collateral was not declining). As such, considering the provision of the Adequate Protection Liens and Adequate Protection Superpriority Claims, the Debtors believe that no further adequate protection is required. The Debtors respectfully submit that the use of the Cash Collateral on the terms set forth herein and in the Proposed Interim Order provides Firstrust with additional adequate protection and is in the best interest of the Debtors, their estates, their creditors, and all other parties in interest in these Cases.

## PROVISIONS THAT IMPLICATE LOCAL RULE 4001-2

41.     The Debtors do not believe that the Proposed Interim Order contains any provisions requiring special disclosure under Local Rule 4001-2 other than as set forth below:

| MATERIAL TERMS OF THE CASH COLLATERAL USAGE | |
|---|---|
| Amount of Cash Collateral Local Rule 4001-2(a)(i)(A) | Amounts of Cash Collateral proposed to be used as set forth in the Budget. *See* Interim Order, at ¶ 1. |
| Superpriority Claims Local Rule 4001-2(a)(i)(F) | As adequate protection of the interests of Firstrust in the Prepetition Collateral against any diminution in value of such interests in the Prepetition Collateral, Firstrust is hereby granted as, and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in these Cases (the "**Adequate Protection Superpriority Claims**"). |

| | |
|---|---|
| | The Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, as and to the extent provided by Bankruptcy Code section 507(b).<br><br>*See* Interim Order, at ¶¶ 5-6. |
| Postpetition Liens on Unencumbered Assets<br>Local Rule 4001-2(a)(i)(G) | As adequate protection for the interest of Firstrust, for, and solely to the extent of, any diminution in the value of in Firstrust's interest in the Prepetition Collateral resulting from (i) the Debtor's use of cash collateral, (ii) the use, sale, or lease of the Prepetition Collateral (other than cash collateral) pursuant to section 363(c) of the Bankruptcy Code, and (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, Firstrust is hereby granted a continuing replacement security interest in, and lien (collectively, the "Adequate Protection Lien"), which shall have the same priority, validity, force, extent, status of perfection (if any), and effect as the Prepetition Liens that it replaces, effective as of the Petition Date without the necessity of Firstrust taking any further action, upon the right, title, and interest in the following property of the Debtor:<br><br>a. All Prepetition Collateral of Firstrust, including all proceeds, profits, rents, and products thereof; and<br><br>b. Property acquired by the Debtor after the Petition Date, which is of the same nature, kind, and character as the Prepetition Collateral, and all proceeds, profits, rents, and products thereof.<br><br>Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in these Cases. The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens, subject to Permitted Liens, and to any valid, perfected, unavailable liens or security interests in existence as of the Petition Date or that are perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b).<br><br>*See* Interim Order, at ¶¶ 3–4. |

15

## BANKRUPTCY RULE 4001(a)(3) SHOULD BE WAIVED

42.    The Debtors request a waiver of the stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 4001(a)(3) to the extent it is applicable here. Bankruptcy Rule 4001(a)(3) provides, "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As explained above and in the First Day Declaration, the use of Cash Collateral and Prepetition Collateral is essential to prevent irreparable damage to the Debtor's operations. Accordingly, ample cause exists to justify the waiver of the fourteen-day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent such stay applies.

## REQUEST FOR A FINAL HEARING

43.    Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request the Court to set a date for the Final Hearing.

## SATISFACTION OF BANKRUPTCY RULE 6003(b)

44.    Pursuant to Bankruptcy Rule 6003(b), any motion seeking to use property of the estate pursuant to section 363 of the Bankruptcy Code or to satisfy prepetition claims within twenty-one days of the Petition Date requires the Debtors to demonstrate that such relief "is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. As described above, without access to Cash Collateral, the Debtors would be unable to operate their business and fund these Cases. For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied, and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

16

**REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)**

45.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth throughout this Motion, the Debtors' inability to use Cash Collateral during the pendency of these Cases would completely destroy the Debtors' ability to continue operating as a going concern and preserve the value of the estates as the Debtors pursue a Sale. For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Interim Order.

46.     To implement the foregoing immediately, the Debtors also respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a), to the extent they are applicable to the Proposed Interim Order.

**DEBTORS' RESERVATION OF RIGHTS**

47.     Nothing in the Proposed Interim Order or this Motion (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action against any party; or (d) shall be construed as a promise to pay a claim. Without limiting the foregoing, the Debtors reserve their rights and defenses with respect to the validity, priority, extent of, or perfection of the Prepetition Liens in any Prepetition Collateral or other property, including the Cash Collateral.

17

## NOTICE

48.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for the Firstrust; (c) the holders of the 20 largest claims against the Debtors on a consolidated basis; and (d) all parties that have requested notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered on this Motion will also be served as required by Local Rule 9013-1(m).  The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Interim Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated:  June 22, 2026
       Wilmington, Delaware

**RAINES FELDMAN LITTRELL LLP**

*/s/ Thomas J. Francella*
Thomas J. Francella, Jr. (No. 3835)
Mark W. Eckard (No. 4542)
824 North Market Street, Suite 805
Wilmington, DE 19801
Telephone: (302) 772-5803
tfrancella@raineslaw.com
meckard@raineslaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

18