**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GVO PARTNERS LLC, *et al.*,[1] | ) | Case No. 26-10976 (KBO) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DECLARATION OF JOSEPH SCIAMANNA IN SUPPORT OF**
**CHAPTER 11 PETITIONS AND FIRST DAY PLEADINGS**

I, Joseph Sciamanna, hereby declare under penalty of perjury as follows:

1.      I serve as the Chief Executive Officer and Manager of GVO Partners LLC, and certain of its affiliates that are the debtors and debtors in possession (the "**Debtors**") in the above-captioned bankruptcy cases (these "**Cases**").  The Debtors are, collectively, a managed services organization manages and operates a group of medical aesthetics practices.  The Debtors partner with, invest in and operate medical aesthetics, cosmetic dermatology and plastic surgery clinics in multiple regions of the United States, enabling partnering physicians to grow their practice, achieve financial goals and explore exit opportunities.  I submit this declaration in support of the Debtors' voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") filed on June 16, 2026 (the "**Petition Date**") and the relief requested pursuant to the Debtors' applications and motions filed contemporaneously herewith (collectively, the "**First Day Motions**").

2.      I am familiar with the Debtors' operations, business affairs and circumstances leading to these Cases.  Unless otherwise indicated, all facts set forth in this declaration are based

---

[1]      The Debtors in these Cases, along with the last four (4) digits of their federal tax identification numbers, are: (1) GVO Partners LLC (5862); (2) GVO Holdings Group LLC (8330), (3) GVO Topco LLC (5638); (4) GVO Urban, LLC (8860); (5) GVO Still Waters, LLC (5823); (6) GVO Sweetgrass, LLC (7775); and (7) Urban Medspa & Weight Loss Center Charlotte, P.C. (7185).  The Debtors' mailing address is 218 Brighton Park Blvd., Suite 101, Summerville, SC 29486.

1

on (a) my personal knowledge of the Debtors' business operations and finances or my review of relevant documents, (b) information received from persons working under my supervision or direction, the Debtors' management team, or the Debtors' advisors, and/or (c) my opinion based upon my experience as a restructuring professional. If called upon to testify, I would testify competently to the facts set forth herein.

## BACKGROUND AND EVENTS LEADING TO BANKRUPTCY

3.    I am the co-founder and Chief Executive Officer of GVO Partners LLC ("**GVO Partners**"), an independent investment management firm that partners with and invests in medical aesthetics, cosmetic dermatology, and plastic surgery practices across the United States. I have spent my career as an entrepreneur and healthcare investor, founding, operating, and exiting ventures across multiple sectors. I began my career in 2021 when I founded and subsequently exited Heliostatix, a healthcare technology venture. I also founded and built 4-Wall Health Care, including the development and multi-market expansion of Impact Behavioral Health, an applied behavior analysis therapy company. Through these ventures, I have gained extensive experience in business management, operations, branding, and the expansion of healthcare companies from startup to multi-market scale. Since its founding in 2022, I have been responsible for GVO Partners' strategy and operations, and its partnerships with affiliated practices. I attended Harvard Business School, where I began GVO Partners, and I hold a degree in Chemical Engineering from the University of Maryland.

### A.    Transaction History

4.    Between April 2023 and April 2024, GVO acquired three medical spa and plastic surgery practices: GVO Urban, LLC ("**GVO Urban**") in Charlotte, North Carolina, Sweetgrass Plastic Surgery & Spa in Charleston, South Carolina ("**Sweetgrass**"), and Still Waters Day & Medical Spa in Pensacola, Florida ("**Still Waters**"). Each of these acquisitions was financed with

10837500.1

equity from myself and other investors in GVO Partners and with debt financing from three loans from Firstrust Bank ("**Firstrust**").  Each of the businesses initially performed well following acquisition.

**B.      Events Leading to Bankruptcy.**

5.      Beginning in late 2024 and continuing through early 2026, disputes arose among the Debtors, certain of their investors, and several physician partners. Concurrently, disputes arose between the Debtors and Firstrust regarding the Debtors' loan obligations. These disputes materially disrupted the Debtors' operations, caused significant revenue loss, and prevented the Debtors from closing a refinancing transaction that would have satisfied Firstrust's debt. On March 10, 2026, Firstrust commenced a civil action against the Debtors, captioned *Firstrust Bank v. GVO Holdings Group, LLC, et al.*, Civil Action No. 2026-0315-LWW (the "**Firstrust Action**"), seeking damages for alleged breaches of contract and imposition of a receiver over the Debtors' assets.

6.      Faced with such ongoing litigation, oppressive terms under certain merchant cash advance agreements, and attendant challenges to maintaining their businesses as going concerns, the Debtors commenced these Cases to effect a going concern sale and maximize value for the benefit of all creditors.  I believe that a sale as a going concern under the Bankruptcy Code will deliver a value-maximizing result for the Debtors' estates, creditors and other stakeholders.

**CORPORATE STRUCTURE**

7.      The Debtors are affiliated entities with an organization structure as shown on the attached **Exhibit A**.

8.      As shown therein, GVO Partners is the ultimate parent and owns 100% of the equity of GVO Topco, which in turn owns 100% of the equity of GVO Holdings Group LLC ("**Holdings**"), which holds 100% of the equity of (i) GVO Urban, LLC, (ii) GVO Sweetgrass,

3

LLC, and (iii) GVO Still Waters, LLC. Urban Medspa & Weight Loss Center Charlotte, P.C., is an affiliate of the entities listed above through common ownership with GVO Partners.

## CAPITAL STRUCTURE

### A.     The Firstrust Loans

9.     The Debtors are obligors under under three separate loans from Firstrust with aggregate indebtedness of not less than $9,979,767.75, as follows:

10.     As of June 20, 2023, Holdings, as borrower, and Firstrust, as lender, entered into a loan agreement for a principal amount of $1,900,000 (the "**Initial Firstrust Loan**").   The obligations under the Initial Firstrust Loan are jointly and severally guaranteed by each of the other Debtors and are secured by first priority liens in substantially all of the assets of the Debtors.  As of January 21, 2026, Firstrust asserted the aggregate amount outstanding under the Initial Firstrust Loan to be $1,693,826.03.  Further unpaid amounts, including interest, fees, or expenses have continued to accrue since January 21, 2026.

11.     As of August 28, 2023, Holdings, as borrower, and Firstrust, as lender, entered into a loan agreement for a principal amount of $4,850,000 (the "**Second Firstrust Loan**").  The obligations under the Second Firstrust Loan are jointly and severally guaranteed by each of the other Debtors and are secured by first priority liens in substantially all of the assets of the Debtors. As of January 21, 2026, Firstrust asserted the aggregate amount outstanding under the Second Firstrust Loan to be $4,450,858.25.  Further unpaid amounts, including interest, fees, or expenses have continued to accrue since January 21, 2026.

12.     As of March 29, 2024, Holdings, as borrower, and Firstrust, as lender, entered into a loan agreement for a principal amount of $4,100,000 (the "**Third Firstrust Loan**").  The obligations under the Third Firstrust Loan are jointly and severally guaranteed by each of the other

4

Debtors and are secured by first priority liens in substantially all of the assets of the Debtors. As of January 21, 2026, Firstrust asserted the aggregate amount outstanding under the Third Firstrust Loan to be $3,851,700.90. Further unpaid amounts, including interest, fees, or expenses have continued to accrue since January 21, 2026.

**B. The SouthState Loan**

13. Effective as of August 13, 2025, Debtor GVO Sweetgrass, LLC and nondebtors Sweetgrass Plastic Surgery, LLC, and Dennis Schimpf, PC (now known as Craig Blum, PC) executed and delivered the Promissory Note dated August 13, 2025 (the "**SouthState Note**"), in the principal amount of $380,000, to SouthState Bank, National Association ("**SouthState**"). As of the date hereof, the aggregate amount outstanding under the SouthState Loan is approximately $340,814.31 in principal amount, plus any unpaid interest, fees, expenses or other amounts due thereunder or incurred in connection therewith. Pursuant to the Commercial Security Agreement dated August 13, 2025, SouthState holds a security interest in substantially all assets of the SouthState Borrowers, the Debtors believe that SouthState has failed to perfect its security interest with respect to any assets of the Debtors or that any such interest was not timely perfected and is subject to avoidance.

**C. Merchant Cash Advance Loans**

14. Certain Debtors are party to a number of merchant cash advance loans (each, an "**MCA**"). The Debtors believe that the MCAs are usurious, are not enforceable or are subject to subordination, and that the Debtors have claims for damages against the respective MCA lenders. While the MCA lenders may purport to have security interests in some or all of the Debtors' assets, none have perfected any security interest in any of the Debtors' assets, or such interest was was not timely perfected and is subject to avoidance. The MCAs are described below.

### 1.  GVO Still Waters

15.  GVO Still Waters and EBF Holdings, LLC d/b/a Everest Business Funding ("**Everest**") are parties to the *Revenue Based Financing Agreement* dated April 28, 2026 (as later amended, restated or modified, the "**First Everest Loan**"), pursuant to which EBF asserts that GVO Stillwaters is indebted to Everest in the amount of $79,326.60.

16.  GVO Still Waters and Monday Funding LLC ("**Monday Funding**") are parties to the *Standard Merchant Cash Advance Agreement* dated April 30, 2026 (the "**Monday Funding Loan**"), pursuant to which Monday Funding asserts that GVO Stillwaters is indebted to Monday Funding in the amount of $31,305.

17.  GVO Still Waters and SBFS, LLC ("**SBFS**") are parties to a digital loan agreement entered into in April 2026 (the "**SBFS Loan**"), pursuant to which SBFS asserts that GVO Stillwaters is indebted to SBFS in the amount of $40,000.

### 2.  GVO Sweetgrass

18.  GVO Sweetgrass and Family Funding Group LLC ("**Family Funding**") are parties to the *Standard Merchant Cash Advance Agreement* dated May 12, 2026 (the "**Family Funding Loan**"), pursuant to which Family Funding asserts that GVO Stillwaters is indebted to Family Funding in the amount of $27,000.

### 3.  GVO Urban Medspa & Weight Loss Center

19.  GVO Urban Medspa & Weight Loss Center and Retro Advance Inc. ("**Retro Advance**") are parties to the *Future Receivable Sale and Purchase Contract* dated May 14, 2026 (the "**First Retro Loan**"), pursuant to which Retro Advance asserts that GVO Urban Medspa & Weight Loss Center is indebted to Retro Advance in the amount of $138,553.36.

6

10837500.1

20. GVO Urban Medspa & Weight Loss Center and Retro Advance are parties to the Future Receivable Sale and Purchase Contract dated May 27, 2026 (the "**Second Retro Loan**"), pursuant to which Retro Advance asserts that GVO Urban Medspa & Weight Loss Center is indebted to Retro Advance in the amount of $74,000.

**D.      MCA Settlement Agreement**

21. The Debtors, Dennis Schimpf PC d/b/a GVO Sweetgrass Plastic Surgery, Joseph Sciamanna and Unique Funding Solutions LLC ("**UFS**") are parties to the *Settlement Agreement* dated March 31, 2026 (the "**UFS Settlement**"), pursuant to which UFS asserts that the Debtors are indebted to UFS in the amount of $331,668.63.

## NEED FOR USE OF CASH COLLATERAL

22. The Debtors require use of cash collateral to ensure sufficient working capital to operate their businesses, preserve and maximize the value of their estates, administer their estates, and achieve confirmation of a chapter 11 plan. Without use of cash collateral, the Debtors lack the cash to effect a going concern sale pursuant to section 363 of the Bankruptcy Code. I believe that the interests of Firstrust, which is the only party with valid, perfected security interests in any such collateral, will benefit from an orderly sale process as contemplated by the Debtors as compared to a forced liquidation alternative. The Debtors' liquidity needs include payments to employees, third-party vendors, landlords, utilities, taxing authorities, and insurance companies, among others, who provide the essential services needed to operate, maintain, and insure the Debtors' assets.

## THE FIRST DAY MOTIONS

23. Contemporaneously with the filing of this Declaration, the Debtors have filed or will file the First Day Motions to minimize the disruption and adverse effects of the

10837500.1

commencement of the Cases on the Debtors' operations and to preserve value for their estates and all stakeholders.

24.     The First Day Motions are:

a.     **Joint Administration**. *Debtors' Motion for Entry of Order Directing Joint Administration of Related Cases and Granting Related Relief*;

b.     **Creditor Matrix.** *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to File a Consolidated (A) Creditor Matrix; and (B) Top 30 Creditors List; (II) Authorizing Redaction of Certain Personal Identification Information; and (III) Granting Related Relief*;

c.     **Cash Management.** *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, (D) Continue Certain Intercompany Transactions; and (II) Granting Related Relief*;

d.     **Utilities.** *Debtors' Motion for Entry of Interim and Final Orders (I)(A) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services to, or Discriminating Against, the Debtors, (B) Approving the Debtors' Proposed Form of Adequate Assurance of Payment for Future Utility Services, and (C) Approving the Debtors' Proposed Procedures for Resolving Additional Assurance Requests, and (II) Granting Related Relief*;

e.     **Insurance.** *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors To (A) Continue Their Insurance Policies and Premium Financing Arrangements and (B) Honor All Obligations with Respect Thereto; and (II) Granting Related Relief;*

f.     **Employee Obligations.** *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing (A) Payment of Prepetition Wages, Employee Benefits Obligations and Other Compensation, (B) Continue Employee Benefits Programs and Payment of Related Administrative Obligations; and (II) Granting Related Relief*;

g.     **Taxes.** *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Payment of Sales, Use, and Other Taxes and Fees, (II) Authorizing Banks and Other Financial Institutions to Receive, Process, and Honor and Pay Checks Issued and Electronic Payment Requests Made Related to Such Taxes and Fees*; and

h.     **Customer Programs**. *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to Honor and Continue Certain Customer Programs and Customer Obligations in the Ordinary Course of Business and Granting Related Relief*; and

8

     *i.*    **Critical Vendors.** *Debtors' Motion for Entry of Interim and Final Orders, Pursuant to Sections 105(a), 363(b), 503(b), 1107(a), and 1108 of the Bankruptcy Code, (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors, (II) Authorizing Banks to Honor and Process Checks and Electronic Transfer Requests Related Thereto; and (III) Granting Certain Related Relief.*

25.    The First Day Motions request authority to, among other things, obtain authority to use cash collateral, honor workforce-related compensation and benefits obligations, pay claims of certain critical vendors, suppliers, and taxing authorities, continue to honor certain customer programs, and continue the Debtors' cash management system and other operations in the ordinary course of business to ensure minimal disruption of the Debtors' business operations during these Cases. For the avoidance of doubt, the Debtors request authority, but not direction, to incur indebtedness, pay amounts or satisfy obligations with respect to the relief requested in the First Day Motions.

26.    I have reviewed each of the First Day Motions (including the exhibits and schedules attached thereto) listed above, and the facts set forth in the First Day Motions are incorporated herein by reference. To the best of my knowledge, the facts set forth in the First Day Motions are true and correct, and if called upon to testify, I could and would testify competently to such facts.

27.    As described in the First Day Motions, I believe that the Debtors' requests for interim relief are narrowly tailored, or where the requested payments would otherwise be entitled to priority over general unsecured claims under the Bankruptcy Code. It is my opinion that the relief sought in the First Day Motions is essential to avoid irreparable harm and to allow the Debtors to operate without disruptions, as well as to preserve the value of the Debtors' estates, and is in the best interests of the Debtors' estates, creditors and other stakeholders.

## CONCLUSION

28.    For the reasons described herein and in the First Day Motions, I believe that the relief requested in the First Day Motions should be granted by the Court, with such other and

10837500.1

further relief for the Debtors as this Court deems just and proper, in the most expeditious manner possible.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: June 22, 2026                              */s/ Joseph Sciamanna*
                                                        Joseph Sciamanna

10837500.1