**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GVO PARTNERS LLC, *et al.*,[1] | ) | Case No. 26-10976-KBO |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS**
**AUTHORIZING DEBTORS TO PAY PREPETITION AMOUNTS TO CERTAIN**
**CRITICAL VENDORS**

The debtors and debtors in possession (each, a "**Debtor**" and collectively, the "**Debtors**") in the above-captioned cases (these "**Cases**"), by and through their undersigned proposed counsel, hereby move for entry of an order granting the relief described below.  In support of this motion (this "**Motion**"), the Debtors rely on the *Declaration of Joseph Sciamanna in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**")[2] filed contemporaneously herewith and respectfully state as follows:

1.      By this Motion, the Debtors request, entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, pursuant to sections 105(a), 363(b), 1107(a), and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing, but not directing, the Debtors to pay, in the ordinary course of business, the prepetition, fixed, liquidated, and undisputed claims (the "**Critical Vendor Claims**") of

---

[1]      The Debtors in these Cases, along with the last four (4) digits of their federal tax identification numbers, are: GVO Partners LLC (5862); GVO Holdings Group LLC (8330), GVO Topco LLC (5638); GVO Urban, LLC (8860); GVO Still Waters, LLC (5823); GVO Sweetgrass, LLC (7775); and Urban Medspa & Weight Loss Center Charlotte, P.C. (7185).  The Debtors' mailing address is 218 Brighton Park Blvd., Suite 101, Summerville, SC 29486.

[2]      Capitalized terms used but not defined herein have the meaning ascribed in the First Day Declaration.

10837873.1

certain critical vendors (collectively, the "**Critical Vendors**") which provide goods and services that the Debtors deem, in the exercise of their business judgment, to be essential for the continued operation of the Debtors' businesses and the preservation of the value of their assets as set forth in the *Declaration of Joseph Sciamanna in Support of Chapter 11 Petitions and First Day Pleading* (the "**First Day Declaration**").  Finally, the Debtors respectfully request that the Court schedule a final hearing on the Motion within thirty (30) days of the Petition Date, or as soon thereafter as the Court's schedule permits.

**JURISDICTION, VENUE AND PREDICATES FOR RELIEF**

1. This Court has jurisdiction to consider and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Sections[3] 105(a), 363, 1107 and 1108, and Bankruptcy Rule 6004.

**BACKGROUND**

4. On June 16, 2026 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have filed a motion requesting joint administration of

---

[3] "Section" shall refer to the referenced section of the United States Bankruptcy Code found at title 11 of the United States Code.

these Cases pursuant to Bankruptcy Rule 1015(b).  No trustee, examiner, or official committee of unsecured creditors has been appointed in these Cases.

5.      The Debtors are, collectively, a managed services organization, that manages and operates a group of medical aesthetics practices.  Additional information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of Cases, is set forth in the First Day Declaration and is incorporated herein by reference.

### The Critical Vendors

6.      The Debtors have two Critical Vendors who are owed amounts for prepetition goods, which the Debtors must have in order to continue to operate.  The first, *Allergan Aesthetics* ("**Allergan**") provides Botox®, filler and medical aesthetics supplies.  The second, *Galderma* ("**Galderma**") provides Dysport®, filler, medical aesthetics supplies.  Such products are essential for the Debtors to operate their practice locations.

7.      In the process of identifying Critical Vendors, the Debtors considered a variety of factors, including: (1) whether a vendor is a sole-source, limited-source, or high-volume supplier of goods or services critical to the Debtors' business operations; (2) whether an agreement exists by which the Debtors could compel a vendor to continue performing on prepetition terms; (3) whether the Debtors have negotiated favorable pricing terms with a vendor; (4) whether alternative vendors are available that can provide the requisite volumes of similar goods or services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto; (5) the degree to which replacement costs (including pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a vendor's prepetition claim; (6) whether failure to pay all or part of a particular vendor's claim could cause the vendor to hold goods owned by the

Debtors, or refuse to ship goods or perform services on a postpetition basis; (7) whether the vendor may otherwise be entitled to administrative priority claims under Section 503(b)(9) and/or reclamation claims under Section 546(c); and (8) whether failure to pay a particular vendor could result in contraction of trade terms as a matter of applicable non-bankruptcy law or regulation.

8.      The Critical Vendors provide goods that are so vital to the Debtors' businesses that the cessation of the delivery of such goods and services would jeopardize the Debtors' ability to operate and maximize the value for the sale of the Debtors as a going concern.  The Debtors cannot otherwise easily or quickly replace Allergan and Galderma without significant time, disruption, or expense. Any material interruption in the provision of the goods provided by the Critical Vendors, however brief, could cause irreparable harm to the Debtors' go-forward businesses, goodwill, customer base, and ability to generate revenue pending the Debtors' intended sale as a going concern. Such harm would likely far outweigh the cost of payment of the Critical Vendor Claims. The Debtors intend to pay prepetition Critical Vendor Claims only when, in their exclusive business judgment, the benefits to their estates from making such payments will exceed the costs to their estates. Moreover, the Debtors have negotiated favorable payment terms with the Critical Vendors that they intend to continue throughout the Cases and have relied on in determining their funding needs for these Cases.

**The Terms and Conditions of Payment of Critical Vendor Claims**

9.      To avoid undue delay and disruption in the provision of essential goods and the consequent harm to the Debtors' businesses, estates and creditors, and to maximize the value of the Debtors' assets, the Debtors seek immediate authority, but not direction, to pay, on a

4

case-by-case basis, the Critical Vendor Claims, according to reasonable negotiated payment terms, to be negotiated by the Debtors in their sole discretion.

10.     In total, the Debtors believe that, as of the Petition Date, they owe approximately $518,723 to Allergan and $70,506.31 to Galderma.  Thus, the Debtors request authority to pay a total of $589,230.16 in respect of the Critical Vendor Claims.

11.     The Debtors believe that payment of the Critical Vendor Claims subject to the conditions set forth herein increases the likelihood that such Critical Vendors will continue to offer existing trade terms or even improve trade terms for the Debtors on a postpetition basis, thereby maximizing the value of the Debtors' estates.

12.     Subject to the Court's approval, the Debtors intend to pay the Critical Vendor Claims only to the extent necessary to preserve the Debtors' businesses and maximize the value of their assets for the benefit of their estates and creditors.  To that end, the Debtors propose to condition the payment of Critical Vendor Claims upon each Critical Vendor's agreement to continue supplying goods and services postpetition on terms that are acceptable to the Debtors.  The Debtors will use their reasonable best efforts to require the applicable Critical Vendor to provide trade credit terms for the postpetition delivery of goods and services that are at least as favorable as prepetition trade terms.  In some circumstances, the Debtors, in their discretion, may require certain Critical Vendors to enter into a contractual agreement evidencing such terms.

13.     Additionally, the Debtors request that if a Critical Vendor does not continue to provide goods or services on agreed-upon trade terms, that: (a) any payment to that Critical Vendor on account of a Critical Vendor Claim is an improper postpetition transfer, and, therefore, recoverable from the Critical Vendor; and (b) upon recovery of the payment by the

5

Debtors, the Critical Vendor Claim shall be reinstated as if the payment had not been made. In lieu of recovery of such payments, if there exists an outstanding postpetition balance due from the Debtors to a Critical Vendor, the Debtors may recharacterize and apply any payment made pursuant to an order granting this Motion to such outstanding postpetition balance and such Critical Vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

### BASIS FOR THE RELIEF REQUESTED

**A.      The Court May Authorize Payment of the Critical Vendor Claims Under Section 105**

14.      The relief requested herein is proper based on Section 105(a). Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Under Section 105(a), courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of the debtor's business. Allowing a debtor to honor prepetition obligations under Section 105(a) authority is appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving going concern value and maximizing property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Sav. Assoc. v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999).

15.      The Supreme Court has recognized the need to pay certain prepetition claims in appropriate circumstances.  In *Czyzewski v. Jevic Holding Corp.,* 137 S. Ct. 973 (2017), the Supreme Court reasoned that critical vendor orders supported "significant Code-related objectives that the priority-violating distributions serve." *Czyzewski v. Jevic Holding Corp.,*

137 S. Ct. 973, 985 (2017).   In *Jevic*, the Supreme Court offered several appropriate considerations for courts in determining whether to grant motions for payment of critical vendors including the following: (i) preserve the debtor as a going concern; (ii) make the disfavored creditors better off; (iii) promote the possibility of a confirmable plan; (iv) help to restore the *status quo ante*; or (v) protect reliance interests. *Id. at 986.*

16.     For the reasons set forth herein, and in light of the critical need for the Debtors to preserve the going concern value of their businesses by continuing to operate, payment of the Critical Vendor Claims as requested herein is proper in accordance with Section 105.

**B.      Paying Critical Vendor Claims is Proper Under the Doctrine of Necessity**

17.     Payment of the Critical Vendor Claims is further supported by the doctrine of necessity.  The doctrine of necessity is a well-settled doctrine that permits a bankruptcy court to authorize payment of certain prepetition claims prior to the completion of the reorganization process where the payment of such claims is necessary to the reorganization.  *See In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment); *see also In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit the pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor."). Invocation of the doctrine of necessity is appropriate where prepetition creditors — here, the Critical Vendors— provide vital goods to a debtor that would be unavailable if the debtor did not satisfy its prepetition obligations.  *See In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) ("a bankruptcy court may exercise its equity powers under § 105(a) to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of survival of the Debtor

7

and payment of creditors in full or at least proportionately'") (citation omitted); *see also Ionosphere Clubs*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) (*quoting In re Leigh & New England Rwy Co.*, 657 F.2d 570, 581 (3d Cir. 1981)) ("The 'necessity of payment' doctrine . . . [permits] immediate payment of claims of creditors where those creditors will not supply services or materials essential to the conduct of the business until their pre-reorganization claims have been paid.").

18.     For the reasons discussed herein, payment of the Critical Vendor Claims is necessary to maintain the going concern of the Debtors pending their intended sale.  In particular, and as further set forth above, without payment of the Critical Vendor Claims, the Debtors' businesses and operations will be detrimentally impacted because the Debtors will not be able to obtain the goods and services necessary for the Debtors to operate the Restaurants and generate revenue.  In the event that such Critical Vendors ceased providing these goods and services to the Debtors, the Debtors would be forced to incur exorbitant costs in order to find alternative sources of these critical goods and services, may lose favorable trade terms which are essential to their operations, and may even be forced to close their doors.

**D.**     **Payment of Critical Vendors Claims is Proper Under Section 363**

19.     Courts have also authorized payment of prepetition obligations under Section 363(b) where a sound business purpose exists for doing so. *See e.g. In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks."); *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of certain claims).

10837873.1

20.     Once a debtor has articulated a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

21.     Moreover, if "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. Of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *F.D.I.C. v. Faigin*, No. CV 12–03448-DDP, 2013 WL 3389490, at *5, 2013 U.S. Dist. LEXIS 94899 (C.D. Cal. July 8, 2013) ("The rule establishes a presumption that directors' decisions are based on sound business judgment, and it prohibits courts from interfering in business decisions made by the directors in good faith and in the absence of a conflict of interest.") (citations omitted).  Courts should decline to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence.  *See, In re Pomona Valley Med. Group, Inc.,* supra; *In re AWTR Liquidation Inc.,* 548 B.R. 300, 314 (Bankr. C.D. Cal. 2016) ("The effect of the business judgment rule is to raise the burden of proof from ordinary negligence to gross negligence—'i.e., failure to exercise even slight care.'"); *Mann v. GTCR Golder Rauner, LLC*, 483 F.Supp.2d 884, 902 (D. Ariz. 2007) ("Because the business judgment rule is a 'powerful presumption,' it can only be 'rebutted in those *rare cases* where the decision under attack is so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith.'") (citations omitted).

9

22.     As discussed above, the Debtors have determined, in the sound exercise of their business judgment, that the goods provided by the Critical Vendors are vital to the Debtors' ability to generate revenue during these Cases.  As such, the failure to honor their obligations to the Critical Vendors could have a material adverse impact on the Debtors' continued operations and, thus, their efforts to consummate a sale of their businesses as a going concern. Accordingly, the preservation and protection of the Debtors' businesses through ongoing relationships with the Critical Vendors provides a sufficient business justification for payment of Critical Vendor Claims, even if such payments were deemed to be outside the ordinary course of business (which they are not).

23.     The relief requested in this Motion contemplates the payment of Critical Vendor Claims of those Critical Vendors who agree to provide postpetition goods to the Debtors on customary trade terms or other terms acceptable to the Debtors, and is therefore consistent with and appropriate under Section 363.

24.     Courts in this district regularly grant relief consistent with that which the Debtors are seeking in this Motion. *See, e.g.*, *In re MRRC Hold Co., et. al.,* Case No. 24-11164 (CTG) (Bankr. D. Del. June 27, 2024); *In re Agway Farm and Home Supply, LLC.*, Case No. 22-10602 (JKS) (Bank. D. Del. July 6, 2022); *In re Sugarfina Inc.,* No. 19-11973 (Bankr. D. Del.  Sept. 6, 2019 Doc. 145); *In re Hexion Holdings LLC*, No. 19-10684 (KG) (Bankr. D. Del. May 1, 2019) (authorizing the payment of prepetition critical vendor claims); *In re ATD Corp.*, No. 18-12221 (KJC) (Bankr. D. Del. Oct. 24, 2018) (same); *In re VER Techs. Holdco LLC*, No. 18-10834 (KG) (Bankr. D. Del. May 4, 2018) (same); *In re Claire's Stores, Inc.*, No. 18-10584 (Bankr. D. Del. Apr. 17, 2018) (same); *In re Charming Charlie Holdings, Inc.*, No. 17-12906 (CSS) (Bankr. D. Del. Jan. 10, 2018) (same); *In re True Religion*

10837873.1

*Apparel, Inc.*, No. 17-11460 (CSS) (Bankr. D. Del. July 31, 2017) (same); *In re GST AutoLeather, Inc.*, No. 17-12100 (LSS) (Bankr. D. Del. Nov. 13, 2017 (same); and *In re TK Holdings Inc.*, No. 17-11375 (BLS) (Bankr. D. Del. Aug. 9, 2017) (same).

E.    **Paying Critical Vendor Claims is Also in Furtherance of the Debtors' Duties Under Sections 1107(a) and 1108**

25.    Sections 1107(a) and 1108 place "a fiduciary duty on a debtor in possession to protect and preserve the debtor's estate, including the going-concern value of an operating business." *In re Pioneer Health Servs.*, 570 B.R. 228, 234 (Bankr. S.D. Miss. 2017). The Debtors are thus fiduciaries, each "holding the bankruptcy estate and operating the business for the benefit of [its] creditors and (if the value justifies) equity owners." *In re CoServ, LLC*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor-in-possession is the duty "to protect and preserve the estate, including operating business's going-concern value." *Id.*

26.    Courts have noted that there are instances in which a debtor-in-possession can fulfill its duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that pre-plan of reorganization satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* at 497-498. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.*

11

10837873.1

27.     Similarly, in *In re Kmart Corp.,* 359 F.3d 866 (7th Cir. 2004), the court held that certain prepetition claims might be critical under limited circumstances if the following evidence were presented: (1) the payments are necessary for a successful reorganization, (2) the disfavored unsecured creditors will be as well off with reorganization as with liquidation, and (3) the critical vendors would cease doing business with the debtor if the payments are not made. *See, In re Kmart Corp.,* 359 F.3d 866, 872-874 (7th Cir. 2004).

28.     Payment of the Critical Vendor Claims undeniably meets each element of the *CoServ* court's standard.  First, as described above, the Debtors have narrowly tailored the definition of "Critical Vendor" to encompass only those vendors that provide goods and services that are so vital to the Debtors' businesses that the cessation of the delivery of such goods and services would jeopardize the Debtors' ability to operate and maintain their value pending a going concern sale; and that the Debtors cannot otherwise easily or quickly replace without significant time, disruption, or expense.  Any interruption of the Debtors' operations would jeopardize the success of these Cases. Second, because of the essential nature of the critical goods and services provided by the Critical Vendors and the difficulty associated with finding alternative sources for those goods, the potential harm and economic disadvantage that would stem from the failure of any of the Critical Vendors to perform, as further described above, is grossly disproportionate to the amount of any Critical Vendor Claim sought to be paid.  Third, with respect to each of the Critical Vendor Claims, the Debtors have examined other legal options short of payment of such Critical Vendor Claims and have determined that there exists no practical or legal alternative to payment of the Critical Vendor Claims.

29.     Therefore, the Debtors can only meet their fiduciary obligations under Sections 1107(a) and 1108 by payment of the Critical Vendor Claims.

10837873.1

**F.**    **The Debtors' Banks Should be Authorized to Honor Checks, Wire Transfers, and Electronic Fund Transfers**

30. In connection with the foregoing, the Debtors respectfully request that the Court (a) authorize the Banks to receive, process, honor, and pay all checks and transfers issued by the Debtors in accordance with the Motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (b) provide that all Banks may rely on the representations of the Debtors with respect to whether any check or transfer issued or made by the Debtors before the Petition Date should be honored pursuant to the Motion (such banks and other financial institutions having no liability to any party for relying on such representations by the Debtors provided for herein); and (c) authorize the Debtors to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with the Motion are dishonored or rejected by the Banks.

31. The Debtors reserve the right to contest the amount claimed by any of the Critical Vendors in the ordinary course of business. The relief requested herein should not (a) be construed as a request to assume or reject, or for authority to assume or reject, any executory contract or unexpired lease under Section 365 or otherwise, (b) waive, affect, or impair any of the Debtors' rights, claims, or defenses, including, but not limited to, those arising from Section 365, other applicable law, or any agreement, (c) grant third-party beneficiary status or bestow any additional rights on any third party, (d) be otherwise enforceable by any third party other than the Banks, or (e) impair the Debtors' ability to contest or object to any claims, including the Critical Vendor Claims, asserted against the Debtors on any ground permitted by applicable law.

10837873.1

**WAIVER OF STAY**

32.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

**RESERVATION OF RIGHTS**

33.     The Debtors reserve the right to contest the amount claimed by any of the Critical Vendors to be in the ordinary course of business.  The relief requested herein should not (a) be construed as a request to assume or reject, or for authority to assume or reject, any executory contract or unexpired lease under Section 365 or otherwise, (b) waive, affect, or impair any of the Debtors' rights, claims, or defenses, including, but not limited to, those arising from Section 365, other applicable law, or any agreement, (c) grant third-party beneficiary status or bestow any additional rights on any third party, (d) be otherwise enforceable by any third party other than the Banks, or (e) impair the Debtors' ability to contest or object to any claims, including the Critical Vendor Claims, asserted against the Debtors on any ground permitted by applicable law.

**NOTICE**

34.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for Firstrust Bank; (c) the holders of

14

10837873.1

the 20 largest claims against the Debtors on a consolidated basis; (d) the Critical Vendors; and (e) all parties that have requested notice pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order entered on this Motion will also be served as required by Local Rule 9013-1(m). The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

## NO PRIOR REQUEST

35.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein substantially in the forms attached hereto as Exhibit A and Exhibit B, and grant such other and further relief as may be just and proper.

Dated:  June 23, 2026
      Wilmington, Delaware

**RAINES FELDMAN LITTRELL LLP**

*/s/ Thomas J. Francella*
Thomas J. Francella, Jr. (No. 3835)
Mark W. Eckard (No. 4542)
824 North Market Street, Suite 805
Wilmington, DE 19801
Telephone: (302) 772-5803
tfrancella@raineslaw.com
meckard@raineslaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

10837873.1